**UNITED STATES, Appellee,**

v.

**Eugenio BETANCOURT–ARRETUCHE, Defendant, Appellant.**

**No. 90–1853.**

United States Court of Appeals, First Circuit.

Heard April 3, 1991.

Decided May 17, 1991.

Miguel A.A. Nogueras, Asst. Federal Public Defender, with whom Gerardo Ortiz Del Rivero, Federal Public Defender, was on brief for defendant, appellant.

Jose A. Quiles, Asst. U.S. Atty., with whom Edwin O. Vázquez, Asst. U.S. Atty., and Daniel F. Lopez–Romo, U.S. Atty., were on brief for appellee.

Before CAMPBELL and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

This appeal arises from a verdict of guilty on a single count of unlawful possession with intent to distribute more than 700 pounds of cocaine [1] found on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C.App. § 1903(a), (c)(1)(C) and (f) (1988).[2] Defen-

---

**1.** At Betancourt's first trial, which resulted in a hung jury, the parties stipulated that the approximate street value of the cocaine was $30 million.

**2.** Section 1903 reads in pertinent part:

(a) **Vessels of United States or vessels subject to jurisdiction of United States**

It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, or who is a citizen of the United States or a resident alien of the United States on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

. . . . .

(c) **"Vessel subject to the jurisdiction of the United States" and "vessel without nationality" defined; claim of nationality or registry**

(1) For purposes of this section, a "vessel subject to the jurisdiction of the United States" includes—

. . . . .

(C) a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States;

. . . . .

dant-appellant Eugenio Betancourt–Arretuche was the master of the vessel. There are two issues: 1) whether the district court erred in denying Betancourt the right to represent himself at trial; and 2) whether the district court erred in denying Betancourt's Rule 29 motion for acquittal.

## I. BACKGROUND

It was a dark and stormy night. Just before midnight on November 23, 1989, the United States Coast Guard Cutter "Bear," on routine patrol several miles south of the island of Vieques, Puerto Rico, made visual contact with a forty-foot vessel flying no flag, displaying no home port or country marking and with the name "Janeth" inscribed only on its bow. When the coast guard unsuccessfully attempted radio contact in both English and Spanish, the Janeth abruptly changed course from between 080 and 090 degrees east to 140 degrees south. The Bear followed and coast guard officers were able to effect a consensual boarding to check the Janeth's documents.

During the customary safety sweep of the Janeth, two coast guard officers discovered a mysterious space under the floorboards inside the pilot house. Betancourt, who cooperated fully with the officers, claimed through an interpreter that he thought the space held an empty ballast tank. When the floorboards were lifted and a freshly painted section of metal deck raised,[3] the coast guard officers discovered twelve duffle bags filled with 317 bricks, wrapped in yellow or black cellophane and marked with distinctive "7's."[4] The bricks field-tested positive as cocaine. The master of the Janeth denied any knowledge of the bags or their contents.

Betancourt did, however, reveal that the ship was of Colombian registry, out of Barranquilla, Colombia, en route to Curacao,

Venezuela. When questioned about his considerable detour to the opposite end of the Caribbean, Betancourt insisted that he was responding to a radio request to aid another vessel, the "Margarita," which was in distress near Isla Aves. He also claimed American citizenship and produced identification including a Florida driver's license. Four Colombian nationals, only two of whom could produce any identification, comprised the crew of the vessel. They were not questioned. In its "Statement of no Objection to seize the Vessel," the Colombian government directed that all Colombian nationals be turned over to it. Hence, Betancourt was the only person arrested.

Betancourt was arraigned on November 30, 1989, pleaded not guilty and was held without bail until his trial began on March 1, 1990. When the jury was unable to reach a verdict on March 7, 1990, the district court declared a mistrial and scheduled a second trial. Betancourt's second trial began on May 15, 1990, before a different judge. He was represented at both trials by the same court-appointed attorney.

After the jury had been empaneled and sworn, and immediately before the opening statements in the second trial, Betancourt moved to proceed pro se. He claimed disagreements with his lawyer regarding defense strategy. No claim of ineffectiveness of counsel was made. Following a lengthy colloquy with the defendant and his counsel, detailed in Part II, the court denied Betancourt's request. Unlike the first trial, Betancourt did not testify in his own behalf at this trial. This time the jury found Betancourt guilty as charged. On August 7, 1990, he was sentenced to a term of imprisonment for 292 months. His timely appeal followed.

---

(f) **Jurisdiction and venue**
Any person who violates this section shall be tried in the United States district court at the point of entry where that person enters the United States, or in the United States District Court of the District of Columbia.

**3.** Evidence of the recent paint job was ascertained from the officers' finding a partial can of

red paint in a cabinet under the ship's wheel with paint on the outside of the can still wet.

**4.** The distinctive numbers written on the bricks of cocaine were thus: 7. This same rendering of a seven also appeared numerous times in the ship's log, creating a reasonable inference that all these numbers were written by the same hand.

## II. PRO SE REPRESENTATION

In the concluding section of his dissent in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the seminal Supreme Court decision on right to self-representation under the sixth amendment, Justice Blackmun posed rhetorically the same procedural problems we face today in this appeal:

Since the right to assistance of counsel and the right to self-representation are mutually exclusive, how is the waiver of each right to be measured? If a defendant has elected to exercise his right to proceed *pro se,* does he still have a constitutional right to assistance of standby counsel? How soon in the criminal proceeding must a defendant decide between proceeding by counsel or *pro se?* Must he be allowed to switch in midtrial? May a violation of the right to self-representation ever be harmless error?

*Id.* at 852, 95 S.Ct. at 2549 (Blackmun, J., dissenting).

### A. *Waiver of Right to Counsel*

■ A recent First Circuit case, *Tuitt v. Fair*, 822 F.2d 166, 174 (1st Cir.), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987), traces the history in the federal courts of the waiver of the right to counsel. In *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), the Supreme Court instructed that one requesting to represent himself must articulate "an intelligent and competent waiver" of his constitutional right to representation. The record must establish that the criminal defendant "knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942). *Faretta v. California*, in which the Court correlated the right to self-representation with the right to representation under the sixth amendment, similarly emphasizes the necessity of the accused's awareness of what he is doing when he gives up "many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. *See also McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (stressing sixth amendment right to conduct own defense if waiver of counsel knowing and intelligent).

*Tuitt* establishes three basic requirements for waiver in this circuit. First, "[t]he constitutional right of self-representation necessarily entails a waiver of the constitutional right to be represented by counsel." *Tuitt*, 822 F.2d at 174 (citation omitted); *see also Chapman v. United States*, 553 F.2d 886, 892 (5th Cir.1977); *Meeks v. Craven*, 482 F.2d 465, 467 (9th Cir.1973). The waiver must be " '*clear* and *unequivocal*' "; otherwise, a " 'court should not deprive defendant of his right to counsel.' " *Id.* at 175 (quoting *Brown v. Wainwright*, 665 F.2d 607, 612 (5th Cir. 1982)) (emphasis added in *Tuitt* ).

Second,

[t]he right to counsel is, in a sense, the paramount right; if wrongly denied, the defendant is likely to be more seriously injured than if denied his right to proceed pro se. Accordingly, we think that requiring an express waiver of the former right before recognizing the latter is a defensible procedure.

*Id.* at 177. *See also Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (courts should honor "every reasonable presumption against waiver" of the right to counsel); *United States v. Purnett*, 910 F.2d 51, 55 (2d Cir. 1990) ("A district court is not obliged to accept every defendant's invocation of the right to self-representation."); *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir.1989) (requiring unequivocal request for waiver serves "institutional purpose" of preventing defendant "from taking advantage of the mutual exclusivity of the rights to counsel and self-representation").

Third, although we do not require a specific warning by the court or formulaic waiver by the accused, *see, e.g., United States v. Campbell*, 874 F.2d 838, 845 (1st Cir.1989); *United States v. Hafen*, 726 F.2d 21, 25 (1st Cir.), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984), the court must determine the nature of the waiver, as well as its clear and unequivocal election:

When a defendant refuses to waive his right to counsel, while demanding to proceed pro se, the trial court will find it hard to know which constitutional right is being asserted, and which is being waived, especially since the right to an attorney is in effect until waived, while the alternative right to self-representation is not in effect until asserted.

*Tuitt*, 822 F.2d at 174 (citing *Wainwright*, 665 F.2d at 610).

In the instant case, immediately after the preliminary charge to the jury, Betancourt's court-appointed attorney conveyed his client's request to represent himself. With the aid of an interpreter, the court queried Betancourt about his reasons for the waiver, his education and language skills, his preparation and his *modus operandi* as a pro se defendant. The following exchange then took place.

> THE COURT: How can you participate in this case if you don't know English? The proceedings in this Court are in English.
>
> DEFENDANT BETANCOURT: I figure that at least for speaking purposes, I have this gentleman here [motioning to the court's interpreter], and as far as I know, in the written part, he [motioning to court-appointed counsel] would continue representing me.

Trial Transcript at 20. While Betancourt's request could be characterized as knowing, it is scarcely unequivocal. He simultaneously requested self-representation while stating that his attorney "would continue representing me" in the written part.

The district court warned Betancourt of the dangers of self-representation, as well as the inherent conflict in testifying while defending himself:

> THE COURT: ... It would be a procedural suicide for you to defend yourself. I don't think that is a—You intend to testify in your case?
>
> DEFENDANT BETANCOURT: Yes.
>
> THE COURT: Can you imagine—How in the world are you going to put together a defense and at the same time you take the stand? It is a very dangerous

proposition. Any mistake you commit may be fatal to your case.

Trial Transcript at 25–26.

Throughout the colloquy the judge discouraged Betancourt from representing himself. Nevertheless, Betancourt steadfastly insisted that he wanted to proceed pro se. During a discussion with the prosecutor and Betancourt's court-appointed attorney, the judge stated:

> [A]lthough there is a right for the defendant to have a say in his defense, obviously, and even to take it upon himself, I don't think that that should be the rule. That may be the exception and I am not prepared, unless certain things, certain representations are met to go along those lines.

Trial Transcript at 22.

After pointing out to Betancourt how well qualified his attorney was, the court stated:

> Seems to me that at this time I should not grant your motion, because the, it seems to me that you are better off with your lawyer than without your lawyer, and I am not prepared to be presiding over something that I would not do myself if I were in your shoes. Okay? Very well.

Trial Transcript at 26. Thus, the court refused Betancourt's request to appear pro se.

■ Given our insistence on an unequivocal demand for self-representation and the "paramount right" to counsel as opposed to waiver of counsel, *Tuitt*, 822 F.2d at 177, the district court's decision was not necessarily an abuse of its discretion. The right to select or refuse specific counsel is always subject to practical courtroom constraints. "This [sixth amendment right] does not mean that a defendant may retain any counsel at any time he wishes; there are limits to a defendant's right to counsel of choice." *United States v. Campbell*, 874 F.2d at 848. "[T]he right of an accused to choose his own counsel cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure." *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir.), *cert. denied*, 434 U.S. 986, 98

S.Ct. 613, 54 L.Ed.2d 480 (1977) (citations omitted). In *United States v. Pina*, 844 F.2d 1 (1st Cir.1988), the court appointed standby counsel in event that the unruly pro se defendant had to be removed: "The trial judge has an obligation to maintain order and dignity so that the process can vindicate all legitimate interests." *Id.* at 14. Moreover, a trial court has extensive discretion over "eleventh-hour" requests for continuances in order to substitute counsel. *United States v. Torres*, 793 F.2d 436, 440 (1st Cir.), *cert. denied*, 479 U.S. 889, 107 S.Ct. 287, 93 L.Ed.2d 261 (1986).

■ Nonetheless, the Supreme Court has emphasized at least twice within the last decade that denial of the constitutional right of self-representation constitutes more than harmless error. In *McKaskle v. Wiggins*, the Court stated:

Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless.

465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8. Obtaining reversal for violation of this pro se right "does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice...." *Flanagan v. United States*, 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984). If Betancourt was wrongly denied his right to self-representation, this alone could alter the trial outcome. There are, however, other factors to consider: the issues of standby counsel and timeliness of the accused's request.

B. *Standby Counsel*

Betancourt's ambiguous request to represent himself while still being represented "in the written part" could be construed as a request for his attorney to act as standby counsel. Both *Faretta* and *McKaskle* provide explicitly for the assistance of standby counsel for a pro se defendant, with *Faretta* empowering the trial judge to reconcile such standby participation with the pro se party's objections. *Faretta*, 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46. *McKaskle* outlines a two-prong test to "impose some limits on the extent of standby counsel's unsolicited participation." First, as "the core of the *Faretta* right," a pro se defendant can control the case he presents to the jury. Second, participation by standby counsel unsolicited by the accused cannot destroy the jury's perception of the latter's self-representation. *McKaskle*, 465 U.S. at 177–78, 104 S.Ct. at 950–51 (footnotes omitted).

Of course, if a pro se defendant increasingly relies upon his standby, he may erode or waive his own *Faretta* rights:

Even when he insists that he is not waiving his *Faretta* rights, a pro se defendant's solicitation of or acquiescence in certain types of participation by counsel substantially undermines later protestations that counsel interfered unacceptably.

*Id.* 465 U.S. at 182, 104 S.Ct. at 953. *See, e.g., United States v. Heine*, 920 F.2d 552, 555 (8th Cir.1990) (accused "impliedly waived his right to proceed pro se by acquiescing to [standby counsel's] increasingly active role at trial"); *United States v. Buckley*, 847 F.2d 991, 1001 n. 8 (1st Cir. 1988) (pro se representation not unequivocal when altered by counsel's continued representation without defendant's objection), *cert. denied*, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989).

The Court further stated that "*Faretta* does not require a trial judge to permit 'hybrid' representation...." For "[a] defendant does not have a constitutional right to choreograph special appearances by counsel." *McKaskle*, 465 U.S. at 183, 104 S.Ct. at 953. Our circuit has followed that teaching with this corollary:

It follows, we think, that if the district court had discretion to deny hybrid representation outright, it had discretion, in granting defendant's request for hybrid representation, to place reasonable limitations and conditions upon the arrangement.

*United States v. Nivica,* 887 F.2d 1110, 1121 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990).[5] The Eleventh Circuit has stressed that there is no sixth amendment right to co-counsel for a pro se defendant, *Julius v. Johnson,* 755 F.2d 1403 (11th Cir.1985), related 840 F.2d 1533 (11th Cir.1988), as amended, 854 F.2d 400 (11th Cir.1988) *cert. denied,* 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988), and that a "defendant may waive his right of self-representation by electing to act as co-counsel." *Raulerson v. Wainwright,* 732 F.2d 803, 809 (11th Cir.), *cert. denied,* 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984). *See also United States v. Mills,* 895 F.2d 897, 903 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990).

In Betancourt's case, neither he nor the trial court delineated the precise nature of his possible hybrid representation. While not required to condone such an arrangement, the court was quick to pronounce its impossibility despite ample judicial precedent otherwise. In fact, in another recent drug smuggling case in the First Circuit, *United States v. Christensen,* 732 F.2d 20 (1st Cir.1984), the master of a ship, which was found loaded with 55,500 pounds of marijuana, was permitted to represent himself with standby counsel. Admittedly, this defendant later appealed on the ground of ineffective assistance, *id.* at 24, a complaint the court here might have intended to quell by its swift foreclosure of Betancourt's options.

■ Although the district court found Betancourt's lack of training beyond high school and his inability to speak English to be substantial factors in its denying Betancourt's motion to proceed pro se, neither has been deemed an insurmountable barrier to pro se representation. *See, e.g., Evangelista v. Secretary of Health and Human Services,* 826 F.2d 136, 142 (1st

Cir.1987) (individual with tenth grade education capable of self-representation); *United States v. McDowell,* 814 F.2d 245, 250 (6th Cir.1987) (insistence on English competency "misunderstand[s] the thrust of *Faretta* and the constitutional *right* it recognized") (emphasis in original), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987). *See generally Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966) (comparing competency to stand trial with competency to waive counsel) (per curiam). There is also First Circuit precedent for standby assistance with legal research and materials. *Barham v. Powell,* 895 F.2d 19, 23 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 2572, 109 L.Ed.2d 754 (1990); *United States v. Pina,* 844 F.2d at 6.

Betancourt had a constitutional right to proceed pro se; he could also utilize some sort of hybrid representation if it were approved by the court. The next crucial issue is the timeliness of the accused's request for waiver.

### C. *Timeliness of Request for Waiver*

■ The issue of timeliness is both tangible and unambiguous; hence, its resolution can be expedient. We have consistently assessed the timeliness of a request for pro se representation and/or a continuance as an essential factor in the granting of such a request. In *Tuitt,* we upheld the superior court's rejection of Tuitt's motion to dismiss his court-appointed attorney when it was "filed for the first time on the day of trial and ... the first time that defense counsel had been given any notice" of his client's dissatisfaction. *Tuitt,* 822 F.2d at 169.[6] Likewise, in *United States v. Allen,* 789 F.2d 90, 93 (1st Cir.), *cert. denied,* 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 103 (1986), we held that a request to dismiss counsel on the first day of trial was untimely, even though the appellant had sent a letter to that effect to the

---

**5.** We also noted:

All too often, a pro se criminal defendant will, whether by inadvertence or design, test the limits of the court's patience and ingenuity in reconciling unorthodox courtroom tactics with the procedural guarantees of the fifth, sixth, and fourteenth amendments.

*Nivica,* 887 F.2d at 1122 (citations omitted).

**6.** This case reached the Massachusetts district court on a petition for habeas corpus, which was denied and later appealed to the First Circuit.

clerk's office two weeks before but had never filed a formal motion with the court. *See also United States v. Richardson*, 894 F.2d 492 (1st Cir.1990) (refusing to allow defendant to substitute counsel on morning of trial); *United States v. Machor*, 879 F.2d 945, 952 (1st Cir.1989) (weighing right to choose counsel against "efficient and effective administration of justice"), *cert. denied*, — U.S. ——, 110 S.Ct. 1167, 107 L.Ed.2d 1070 (1990).

Several other circuits "routinely uphold the discretion of trial courts to deny as untimely requests made after meaningful trial proceedings have begun." *Horton v. Dugger*, 895 F.2d 714, 717 (11th Cir.1990) (denying defendant's request made just eighteen minutes before start of rescheduled trial). *See also Robards v. Rees*, 789 F.2d 379, 382 (6th Cir.1986) (denying pro se request as untimely at start of jury voir dire when accused had been represented by counsel for three months). In general, a *Faretta* request is timely only "if it is asserted 'before the jury is empaneled ...,'" *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir.1990) (quoting *United States v. Smith*, 780 F.2d 810, 811 (9th Cir.1986)) (denial of pro se request as untimely upheld under either constitutional or abuse of discretion standard) (per curiam); *Chapman*, 553 F.2d at 887 (pro se request timely only prior to jury selection). The logic leans upon a Supreme Court holding that in a criminal trial, jeopardy attaches when the jury is sworn. *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). *See also Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) (extending to states the rule that jeopardy attaches when jury is empaneled and sworn).

In Betancourt's case, the jury had already been selected and sworn before his request for self-representation was presented to the judge. Moreover, the accused had been represented by the same lawyer since shortly after his arraignment in November 1989 through his first trial in March 1990. His second trial did not begin until May 15 of the same year, more than two months later. Hence, Betancourt had ample time and knowledge of the circum-

stances to make a request to represent himself at some earlier point. Having had an opportunity to weigh all the pro se factors in a more leisurely manner than did the district court, we affirm its decision on the grounds that the request for pro se representation was made too late.

## III. RULE 29 MOTION FOR ACQUITTAL

The rule governing a motion for judgment of acquittal provides that such a motion may be offered "after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." Fed.R.Crim.P. 29. Betancourt made such a motion, which was denied.

We have read the record *in toto* and agree with the district court that there was more than sufficient evidence for the case to go to the jury and for the jury to find Betancourt guilty beyond a reasonable doubt. In sum: Betancourt was the master of a small, unmarked vessel, out of Colombia, hundreds of miles off its announced itinerary, carrying more than 700 pounds of hidden cocaine worth approximately $30 million. *See supra* at 91. Betancourt's cooperation with the coast guard cannot alone absolve him. His finger-pointing at the four unarrested Colombians, who were released to their government as part of the negotiated seizure of the ship, was an issue for the jury. It rejected this defense.

We have read the supplemental pro se brief filed by appellant. There is no merit to the selective prosecution claim, to which we alluded above. We have also addressed the ineffective assistance of counsel claim in our opinion, and there is no need for further discussion of it.

We affirm the judgment of the district court.