Bert M. MOLINO, Petitioner,

v.

Larry E. DUBOIS, Commissioner of Correction, Respondent.

Civ. A. No. 92–13066–WGY.

United States District Court, D. Massachusetts.

March 23, 1994.

Bert M. Molino, pro se.

LaDonna J. Hatton, Atty. General's Office, Crim. Div., Boston, MA, for respondent.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

Bert M. Molino ("Molino") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his Petition for Writ of Habeas Corpus (the "Habeas Petition"), Molino claims that his Sixth and Fourteenth Amendment rights to present a defense, to a fair trial, and to due process were violated because a justice of the Massachusetts Superior Court limited his use of standby counsel. Habeas Petition, § 12A. Respondent Com-

missioner of Corrections Larry E. Dubois (the "Commissioner") opposes the Habeas Petition on the grounds that the trial justice did not abuse his discretion by imposing limits on the participation of standby counsel since Molino had no *constitutional* right to a minimum level of assistance from standby counsel. This Court rules that Molino knowingly and voluntarily decided to proceed *pro se* at his trial and that he had no *constitutional* right to a minimum level of assistance by standby counsel so that the restrictions imposed by the trial judge were within that judge's discretion and did not violate Molino's Sixth and Fourteenth Amendment rights.

## BACKGROUND

Molino was a passenger in a Chevrolet Camaro which was stopped by State Trooper Roy Minnehan on February 10, 1988. As Trooper Minnehan approached the Camero, he saw Molino adjusting his jacket as if hiding something. During a patdown search for weapons, Trooper Minnehan found a package on Molino's person which was later determined to contain cocaine. Punching Trooper Minnehan in the face, Molino managed to escape the scene, but he was apprehended the next day.

Molino was duly indicted for trafficking in cocaine (Mass.Gen.L. ch. 94C, § 32E) and assault and battery on a police officer (Mass. Gen.L. ch. 265, § 13D). The trial court first appointed counsel for Molino on March 30, 1988. On November 10, 1988, the court allowed counsel's motion to withdraw, and Molino stated that he would obtain private counsel. From November 10, 1988, to January 25, 1989, the case was continued eight times to ascertain Molino's ability to procure private counsel. Meanwhile, the court appointed attorney John LaChance to the case. On January 25, 1989, Molino rejected the assistance of Mr. LaChance and refused to cooperate with him in the preparation of his case. The case was then continued until April 24, 1989, when Molino knowingly and voluntarily chose to represent himself at trial without the assistance of counsel. The trial justice allowed Molino to proceed *pro se,* but also appointed attorney John LaChance as standby counsel.

The trial justice imposed limitations on the role of standby counsel during the trial. Standby counsel was not permitted to prompt Molino to object during the Commonwealth's examination of witnesses, to question witnesses, to draft motions, or to talk at side-bar conferences. Instead, standby counsel was allowed to respond to requests for advice made by Molino at any time. Molino was permitted to submit two motions prepared by standby counsel, to adopt jury instructions prepared by standby counsel, and to have standby counsel attend side-bar conferences. Molino did not object to standby counsel's presence and did seek his advice on several occasions during the trial. Molino, however, never requested that standby counsel take over his representation.

Following a jury trial, Molino was convicted on both indictments. He was sentenced to twelve to fifteen years imprisonment at the Massachusetts Correctional Institution at Cedar Junction on the trafficking charge, and the verdict of guilty for assault and battery on a police officer was placed on file with Molino's consent.[1] Molino appealed the trafficking conviction to the Massachusetts Appeals Court. The Supreme Judicial Court took the appeal on its own motion and affirmed the conviction on November 4, 1991. *See Commonwealth v. Molino,* 411 Mass. 149, 156, 580 N.E.2d 383 (1991).

## ANALYSIS

■ Molino's claim for relief in this Habeas Petition is that the trial justice's imposition of restrictions on standby counsel's participation at trial was an abuse of discretion that violated Molino's constitutional rights to a fair trial and to due process. Molino contends that, despite his knowing and voluntary decision to represent himself, he nonetheless had a federal constitutional right to a minimum level of assistance from standby counsel.

---

1. Molino cannot seek federal habeas relief of the assault and battery charge that was placed on file because he is not in custody as to it. *See* 28 U.S.C. § 2241(c)(3).

The clear terms of the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to be represented by counsel. *Gideon v. Wainwright,* 372 U.S. 335, 342–44, 83 S.Ct. 792, 795–96, 9 L.Ed.2d 799 (1963). In *Faretta v. California,* 422 U.S. 806, 821, 835, 95 S.Ct. 2525, 2534, 2541, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that the Sixth Amendment also guarantees a criminal defendant the right to conduct his own defense, provided that he knowingly and voluntarily forgoes his right to counsel. The question now before the Court, which was initially posed and left unanswered by Justice Blackmun in his dissent in *Faretta,* is "[i]f a defendant has elected to exercise his right to proceed *pro se,* does he still have a *constitutional right* to assistance of standby counsel?" *Faretta,* 422 U.S. at 852, 95 S.Ct. at 2549 (Blackmun, J., dissenting) (emphasis added).

The constitutional rights to be represented by counsel and to represent oneself "are mutually exclusive." *United States v. Nivica,* 887 F.2d 1110, 1121 (1st Cir.1989), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990).[2] A criminal defendant, therefore, cannot assert both the right to proceed *pro se* and the right to be represented by counsel, since the right to appear *pro se* requires a knowing and voluntary waiver of the right to counsel. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541; *Tuitt v. Fair,* 822 F.2d 166, 174 (1st Cir.), *cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987).

Molino relies on two Supreme Court decisions, *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) and *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), to support his argument that he had a constitutional right to a minimum level of assistance by standby counsel. Though "[b]oth *Faretta* and *McKaskle* provide explicitly for the assistance of standby counsel for a *pro se* defendant," neither establishes a constitutional right for such assistance. *United States v. Betancourt–Arretuche,* 933 F.2d 89, 94 (1st Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 421, 116 L.Ed.2d 441 (1991). *Faretta* established the constitutional right to proceed *pro se,* not to assistance from standby counsel. *Faretta,* 422 U.S. at 821, 95 S.Ct. at 2534. The Court in *Faretta* did acknowledge, in a footnote, that when a defendant waives counsel and elects to exercise his *Faretta* right of self-representation, the trial judge *"may—even over objection by the accused—appoint a 'standby counsel'* to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46 (emphasis added). The discretionary authority of the trial judge to appoint standby counsel, however, does not create a constitutional right to such counsel.[3]

Molino further maintains that, in *McKaskle,* the Supreme Court not only recognized a constitutional right to standby counsel, but also established a constitutional guarantee of a minimum level of participation by standby counsel. Yet, in *McKaskle,* the Court considered the upper limit on standby counsel's participation, that is, the point at which standby counsel plays such an active role in representing the accused that the accused's right to self-representation is violated. The Court held that appointment of standby counsel does not violate the right to self-representation so long as the accused main-

---

**2.** *See also,* Justice Blackmun's discussion of the procedural questions that are sure to follow from the Supreme Court's holding in *Faretta* which created a constitutional right to self-representation. *Faretta,* 422 U.S. at 852, 95 S.Ct. at 2549 (Blackmun, J., dissenting) ("[s]ince the right to assistance of counsel and the right to self-representation are mutually exclusive, how is the waiver of each right to be measured?").

**3.** In several cases, reviewing courts have held that it was not an abuse of discretion by the trial court to refuse to appoint standby counsel. *See, e.g., United States v. LaChance,* 817 F.2d 1491, 1498 (11th Cir.), *cert. denied,* 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987); *Locks v. Sumner,* 703 F.2d 403, 407–08 (9th Cir.), *cert. denied,* 464 U.S. 933, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983). It follows that if it is not an abuse of discretion to refuse to appoint standby counsel, then it is not an abuse of discretion to limit the role of standby counsel. *See Nivica,* 887 F.2d at 1121.

tains "actual control" over his case and standby counsel's participation does not "destroy the jury's perception that the defendant is representing himself." *McKaskle*, 465 U.S. at 178, 104 S.Ct. at 951. Indeed, the Court noted that according to its holding in *Faretta*, "no absolute bar on standby counsel's unsolicited participation is appropriate or was intended.... [The] objectives [of *Faretta* ] can be achieved without categorically silencing standby counsel." *Id.* at 176–77, 104 S.Ct. at 950. This acknowledgement of a role for standby counsel is far short of establishing a constitutional right to such counsel, never mind establishing a constitutional right to a minimum level of participation by standby counsel.[4]

■ Furthermore, there is no constitutional right to "hybrid" representation; nor does a "defendant ... have a constitutional right to choreograph special appearances by counsel."[5] *McKaskle*, 465 U.S. at 183, 104 S.Ct. at 953 ("*Faretta* does not require a trial judge to permit 'hybrid' representation"); *see also Betancourt–Arretuche*, 933 F.2d at 94 (First Circuit holds that the trial court has discretion to deny hybrid representation as well as to place limits on such representation); *Nivica*, 887 F.2d at 1121 ("A defendant has no right to hybrid representation.") (citations omitted). Rather, the trial judge has discretion whether or not to appoint standby counsel. *Neal v. State of Texas*, 870 F.2d 312, 315–16 (5th Cir.1989) (appointment of standby counsel for a *pro se* defendant is not mandatory); *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir.), *citing McKaskle*, 465 U.S. 168, 104 S.Ct. 944 and *Faretta*, 422 U.S. 806, 95 S.Ct. 806 (appointment of standby counsel is preferred but not mandatory), *cert. denied*, 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985). "[H]ybrid representation is [not] foreclosed; rather, it is to be employed sparingly and, as a rule, is available only in the [trial] court's discretion.... [N]o case, federal or state, ... has held [that] a denial of hybrid representation [is]

an abuse of discretion or a denial of assured rights...." *Nivica*, 887 F.2d at 1121. Moreover, it follows "that if the [trial] court had discretion to deny hybrid representation outright, it had discretion ... to place reasonable limitations" on the role of the standby counsel. *Id.; see also Betancourt–Arretuche*, 933 F.2d at 94.[6] Here, the trial justice appointed standby counsel and placed reasonable limitations on the role of such counsel which did not constitute an abuse of his discretion nor a denial of Molino's constitutional rights.

## CONCLUSION

■ A *pro se* defendant does not have a constitutional right to a minimum level of assistance by standby counsel. It is within the sound discretion of the trial judge to appoint and limit the role of standby counsel. The trial judge is in the difficult position of striking the proper balance between limiting the participation of standby counsel to protect an accused's right to self-representation and allowing the participation of standby counsel to assist the accused in the presentation of his case. The trial judge must be alert to clever defendants who could seek to play one constitutional right against another, claiming that the trial judge either failed to restrict or overly restricted the role of standby counsel. *See Tuitt*, 822 F.2d at 175.

Here, the trial justice acted within his discretion in refusing to allow standby counsel an expanded role, particularly where, before trial, Molino was fully appraised of standby counsel's limited role and never requested that standby counsel take over representing him. Molino was allowed to exercise his constitutional right to represent himself at trial. There was no violation of his Sixth and Fourteenth Amendment rights to present a defense, to a fair trial, and to due process. The trial justice did not abuse his discretion in restricting Molino's use of standby counsel.

---

4. *See supra* note 3.

5. The term "hybrid" representation includes the relationship where "the attorney acts in a purely advisory capacity, providing the defendant with advice on how to present the case, but not actually participating in the presentation of the

case." *Commonwealth v. Molino*, 411 Mass. at 153 n. 5, 580 N.E.2d 383. The standby counsel relationship is a form of hybrid representation.

6. *See also supra* note 3.

For the above-mentioned reasons, Molino's Petition for a Writ of Habeas Corpus is DENIED.