USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1186

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 TODD L. PROCTOR,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Morton A. Brody, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 Coffin and Campbell, Senior Circuit Judges.
 
 

 Kern Cleven, by Appointment of the Court, for appellant.
 Margaret D. McGaughey, Assistant United States Attorney, with
whom Jay P. McCloskey, United States Attorney, was on brief for
appellee.

January 29, 1999

 
 

 COFFIN, Senior Circuit Judge. Appellant Todd Proctor
claims that the district court unconstitutionally required him to
represent himself at trial despite his timely request for a lawyer.
Because the record does not permit us to say with the required
assurance that Proctor waived his Sixth Amendment right to be
represented by counsel at trial, we conclude that his conviction
must be vacated.
 I. Background
 The details of Proctor's alleged crime have no bearing on
this appeal, and we therefore report only that he was convicted on
two charges related to marijuana trafficking. The appeal centers
on Proctor's decisions concerning his defense and whether the
district court properly calibrated the balance between his right to
counsel and his reciprocal right to self-representation. SeeFaretta v. California, 422 U.S. 806 (1975). We begin with a review
of the facts relevant to that issue.
 Shortly after Proctor's arrest in January 1997, Charles
W. Hodsdon II was appointed to represent him. Five weeks later,
Hodsdon filed a motion to withdraw "due to an attorney/client
breakdown and at the request of the Defendant." The motion was
granted on March 19, 1997, and the next day, Jeffrey M. Silverstein
was appointed substitute counsel. A superseding indictment was
filed on April 17, adding appellant's brother, Clifford Proctor, as
a coconspirator and codefendant. On May 9, acting on Proctor's
behalf, attorney Silverstein filed a motion for a bill of
particulars and three motions to suppress evidence. Silverstein
advised the court that Proctor also wished to join three motions
filed by Clifford. On May 12, Proctor filed a motion to dismiss,
apparently pro se.
 On May 20, 1997, Proctor filed two handwritten letters
with the court announcing his decision to dismiss Silverstein and
asserting "I will now be going pro-se with this case." Proctor
accused Silverstein of various failings, including a lack of
diligence, collusion with the prosecutor, conflict of interest and
misrepresentations. Silverstein filed a motion the same day
seeking to withdraw as counsel, reporting "a breakdown of
communications between the defendant and counsel."
 On May 28, a hearing was held on the joint motion that
Silverstein be permitted to withdraw. After granting it, the court
asked Proctor if he wished to proceed pro se, and he replied that
he did. The court then engaged in a colloquy with Proctor to
ascertain whether he understood the charges, his right to counsel,
and the ramifications of proceeding without counsel, and also asked
whether Proctor was aware of the rules governing criminal trials
and was familiar with the Sentencing Guidelines. Despite
Proctor's affirmative responses, the court attempted to dissuade
him from self-representation:
 Now, I want to advise you, Mr. Proctor,
 that in my opinion a trained lawyer would
 defend you far better than you could defend
 yourself. I think it's unwise of you to try
 to represent yourself. You are not familiar
 with the law; you are not familiar with court
 procedure; and I would strongly urge you not
 to try to represent yourself, but you have a
 perfect right to do so if that is your wish.
 If your decision is entirely voluntary,
 which I assume it is, I will grant you the
 right to represent yourself if that is your
 wish. Is that your wish?

Proctor replied that he wanted to proceed pro se. The court then
found that "the Defendant knowingly and voluntarily waives his
right to counsel" and offered Proctor standby counsel. Proctor
accepted standby assistance, and attorney Wayne Foote was appointed
for that purpose.
 On June 12, Proctor filed a motion for access to a copier
and a typewriter. The motion was denied. He submitted two other
documents in early July, one questioning the competence of
appointed counsel, though not identifying any attorney by name, and
both claiming fabrication of a search warrant affidavit. Neither
paper requested action by the court.
 The events at the heart of this appeal occurred shortly
thereafter, at a motions hearing on July 16, 1997. Proctor
appeared pro se, with attorney Foote as standby counsel. Foote
reported to the court that he had not yet consulted with Proctor,
although he had received a letter from the defendant that day about
a procedural matter and was working on a response. Clifford and
his counsel also were at the hearing.
 In response to questions from the court, Proctor said
that he wished to withdraw the motion for a bill of particulars
that attorney Silverstein had filed, observing that he was most
concerned about his pro se motion to dismiss. He also stated,
again in response to court inquiry, that he wanted a hearing on two
of the three suppression motions filed by Silverstein. 
 A full-day evidentiary hearing was then held, beginning
with a suppression motion filed by Clifford in which Proctor had
not joined. The court denied that motion, and Clifford
subsequently withdrew his other motions, at which point Clifford
and his attorney were excused. The court then heard testimony on
Proctor's third motion to suppress, which related to evidence
seized from a package in Arizona. Following direct questioning of
an Arizona detective by the prosecutor and lengthy cross-
examination by Proctor, the court denied the motion.
 The court then announced its understanding that the only
remaining matter was Proctor's motion to dismiss the indictment
based on a discovery violation. Proctor said he wished to be heard
on that motion, and the court granted a brief recess for him to
prepare. When the hearing resumed, Proctor told the court that he
had been "a little confused" just before the recess, and that he
also wanted to be heard on what is labeled in his brief as his
"first" suppression motion, involving the seizure of evidence from
his mother's house in Maine. The judge indicated his belief that
that motion had been withdrawn earlier in the hearing, but then
asked Proctor if he had evidence to offer on the motion. The
colloquy continued as follows:
 DEFENDANT: Yeah, and I'm not sure what you
 mean by I have printed evidence.
 
 COURT: Well, I'm not going to delay these
 proceedings any longer than they've been
 delayed already. If you have any evidence you
 want to put on with regard to that motion, I'd
 be glad to accept it into evidence, but I
 distinctly heard you say, and I think it was
 because the motion evidently was filed by your
 previous lawyer, you said you weren't
 interested in that and you were just
 interested in the third motion to suppress
 plus the motion to dismiss. So, I'm not going
 back and replow that field. But if you have
 any other evidence that you want to put on or
 enter with regard to that motion, you can go
 ahead and do it, and I'll receive it into
 evidence in this proceeding.
 DEFENDANT: Well, as it relates to I'm not
 sure exactly how to go about this. In support
 of this motion, the defendant alleges that the
 affidavit submitted in support of search of
 search warrant contains material, false
 allegations and/or was prepared in reckless
 disregard for the truth, and that probable
 cause is lacking in the absence of those such
 portions of the affidavit.
 
 I have lots of different things in the
 affidavit that are false, wrong, whatever, and
 is this the right forum to discuss that or
 what?
 
 COURT: What affidavit are you talking about
 and what motion are you talking about?
 
 DEFENDANT: I'm on Defendant's First Motion to
 Suppress, U.S. versus Todd Proctor.
 COURT: The one filed by Mr. Silverstein?
 
 DEFENDANT: Correct.
 
 COURT: All right. And what's your question?
 
 DEFENDANT: Well, how do I go about the
 evidence as far as the reckless disregard for
 the truth?
 
 COURT: Well, Mr. Proctor, we had a discussion
 some time ago when you wanted to be relieved
 of your lawyer or lawyers, and I indicated to
 you that I was not going to be able to give
 you legal advice. I did appoint for you a
 standby counsel who's been patiently standing
 by, but you haven't seen fit to use, and I
 suggest that you ask him.
 
 DEFENDANT: Okay. Well, I'm going to need to
 review some things on that.

The court then stated that it would consider the motion withdrawn
unless Proctor filed further pleadings raising it. At that point,
standby counsel Foote noted that Proctor had, in fact, reserved the
suppression motion at issue. The court, clearly becoming
frustrated by the confusion, declined to hear the motion that day,
but again said that Proctor could file a motion and request a
hearing at a later date. The judge then reprimanded Foote for
waiting until the end of the day to advise the court of his view of
the status of the motions. Foote responded that he had just
discovered the problem, and he suggested that the confusion could
have arisen because two of the suppression motions concerned the
same search, and Proctor had withdrawn one of them. The court then
continued:
 Well, I'll say it once more, and that's
 the last time I'm going to say it. As far as
 I'm concerned, that motion has been withdrawn. 
 If you want to have a hearing on the issues in
 that motion, refile it, and I will revisit it
 to see whether or not I'm going to open up
 these proceedings again before we get to a
 hearing on what we're all after, I hope at
 some point, is a trial.
 Now, do you want to be heard on the
 motion to dismiss?

 Proctor replied that he did, adding, "but I'm not sure if
I'm ready at this point." The hearing concluded with the following
exchange:
 COURT: Well, I gave you a recess to get
 ready and I guess at some point, Mr. Proctor,
 you're going to have to get the message that
 the court is not in session entirely for your
 purposes and for this case. I've already
 given you an inordinate amount of time for
 hearings on these motions, and I will give you
 more time if appropriate. But I am not going
 to spend half of the court's docket on this
 case in order to accommodate your lack of
 utilizing assistance of counsel early on. I
 made that clear to you at the time we had that
 hearing, and now it's coming to fruition, and
 I'm not going to delay the court proceedings
 and the rights of other parties who are
 waiting for hearings on other matters because
 you have some reason why you want to be your
 own lawyer.

 DEFENDANT: Then, at this point, why don't I go
 ahead and get another lawyer and because
 this is just too confusing for me anymore.

 COURT: Well, it's too late for that, Mr.
 Proctor. You want to be heard on the motion
 to dismiss?

 DEFENDANT: I'm not ready right now.

 COURT: All right. Then, I'm going to resolve
 that motion on the papers, and I'm going to
 deny the motion to dismiss, and this case will
 be scheduled for trial, as I indicated, on
 August 25th, as the first case on the list.

 Court will be in recess.

 Proctor subsequently filed four motions for funds, three
of which were denied, and two motions for transcripts, both of
which were granted. One of these specifically requested "a
transcript of that portion of the hearing held on July 16, 1997
relative to the defendant's denial of counsel [by the judge]." 
Proctor presumably did not receive a copy of the hearing transcript
until about the time of trial because it was filed with the clerk
on September 16, the day after jury selection and a week before the
trial began.
 At trial, Proctor represented himself, with Foote 
providing assistance on a few occasions. Foote also made
suggestions concerning the court's draft jury instructions, after
Proctor claimed that he was unable to offer his own requested
instructions because they had been seized by jail officials. 
During deliberations, Foote apparently provided guidance to Proctor
about a jury note concerning the accuracy of an affidavit, and
Proctor subsequently requested that Foote be present if there were
any other discussions of jury questions. No further communication
occurred, however, until the jury returned guilty verdicts on the
two charged marijuana distribution counts. 
 Following the trial, Proctor submitted a written motion
asking that Foote be appointed "full counsel for the forthcoming
sentencing and appeals portions of this case." The motion was
granted, and Proctor was sentenced in December 1997 to 29 months in
prison.
 On appeal, represented by new counsel, Proctor contends
that the district court violated his Sixth Amendment right to an
attorney when it refused at the July 16th hearing to allow him to
"go ahead and get another lawyer" to represent him at trial. The
government disagrees that a constitutional violation took place,
but it does so based on a different understanding of Proctor's
colloquy with the district judge. The government maintains that
the district court, at the end of the day-long motions hearing,
reasonably interpreted Proctor's reference to obtaining a lawyer to
be a request for counsel solely to argue the dismissal motion that
he felt unprepared to present. It further asserts that the court's
refusal to provide an attorney for that purpose was not an abuse of
discretion. In the alternative, the government argues that, if
this court concludes that the district court denied Proctor counsel
for the trial itself, a remand for clarification should be ordered 
because that decision would warrant explanation and the district
court did not state its rationale.
 For the reasons discussed below, we cannot conclude on
this record that Proctor's conviction was free of a Sixth Amendment
violation. Nor do we believe that a remand would resolve our
concerns. As we shall explain, the district judge's understanding
of his exchange with Proctor is not dispositive; the case turns
instead on what message Proctor's words most plausibly conveyed
when he asked for counsel and whether his understanding of the
court's denial of his request was reasonable. Our decision
therefore requires that Proctor be given a new trial.
 II. Discussion
 We begin with a brief sidestep to consider the standard
of review. The government assumes that an abuse of discretion
standard applies to Proctor's request for counsel, while Proctor
maintains that his entitlement to new counsel is a question of law. 
This conflict reflects the more significant dichotomy in their
views about what occurred at the pretrial hearing. Although the
government correctly notes the wide discretion given trial courts
in resolving issues related to the right to counsel, see, e.g.,
United States v. Webster, 84 F.3d 1056, 1063 n.3 (8th Cir. 1996)
(right to claim pro se status subject to court's discretion after
trial has started); United States v. Betancourt-Arretuche, 933 F.2d
89, 93-94 (lst Cir. 1991) (Sixth Amendment does not guarantee right
to counsel of choice, and request for eleventh hour change in
representation within trial court's discretion); Tuitt v. Fair, 822
F.2d 166, 171-72 (lst Cir. 1987) (same), the unusual feature of
uncertainty over what the defendant was requesting and what he
reasonably could understand from the court's response distinguishes
this case. The pivotal issues determining what was at stake in
the colloquy between Proctor and the trial judge and how the Sixth
Amendment applies to those circumstances will of necessity be
considered for the first time on appeal. Our review is
consequently plenary. We thus turn to consideration of Proctor's
constitutional claim, beginning with a review of relevant Sixth
Amendment jurisprudence.
 A. At the Crossroads of the Right to Counsel and the
Right to Self Representation
 The interplay between the Sixth Amendment right to
counsel and the reciprocal constitutional right to self-
representation, see Faretta, 422 U.S. at 806, has long posed a
hazard for trial judges. "[A] trial court can commit reversible
constitutional error by either improperly granting a request to
proceed pro se and thereby depriving the individual of his right
to counsel or by denying a proper assertion of the right to
represent oneself, and thereby violating Faretta." Cross v. United
States, 893 F.2d 1287, 1290 (11th Cir. 1990). The potential for
error is eased somewhat, however, by the recognition that the
right to counsel is paramount: "Where the two rights are in
collision, the nature of the two rights makes it reasonable to
favor the right to counsel which, if denied, leaves the average
defendant helpless." Tuitt, 822 F.2d at 174; see also Stano v.
Dugger, 921 F.2d 1125, 1290 (11th Cir. 1991) (en banc) ("The right
to counsel . . . is preeminent over the right to self-
representation . . . ."); Brown v. Wainwright, 665 F.2d 607, 610
(5th Cir. 1982) (en banc).
 The importance of the right to counsel is reflected in
the precautions required when a defendant seeks to relinquish it. 
Such a waiver must be stated in unequivocal language, see Faretta,
422 U.S. at 835; Betancourt-Arretuche, 933 F.2d at 92; Hamilton v.
Groose, 28 F.3d 859, 861 (8th Cir. 1994); Adams v. Carroll, 875
F.2d 1441, 1444 (9th Cir. 1989), and it must be a knowing,
intelligent and voluntary decision, see, e.g., United States v.
Kneeland, 148 F.3d 6, 11-13 (lst Cir. 1998); Hamilton, 28 F.3d at
861; United States v. Merchant, 992 F.2d 1091, 1095 (10th Cir.
1993). Courts must indulge in every reasonable presumption against
waiver of the right to counsel. See Brewer v. Williams, 430 U.S.
387, 404 (1977); Betancourt-Arretuche, 933 F.2d at 92. The trial
judge must explicitly make the defendant "aware of the dangers and
disadvantages of self-representation, so that the record will
establish that `he knows what he is doing and his choice is made
with eyes open.'" Faretta, 422 U.S. at 835 (quoted in Kneeland, 148
F.3d at 11). See also Maynard v. Meachum, 545 F.2d 273, 279 (lst
Cir. 1976) (An "intelligent" waiver of the right to counsel must
reflect "a sense of the magnitude of the undertaking and . . . an
awareness that there are technical rules governing the conduct of
a trial."). In discharging the responsibility to determine whether
there is an intelligent and competent waiver of the right to
counsel in light of the strong presumption against waiver, a trial
judge "must investigate as long and as thoroughly as the
circumstances of the case before him demand." Von Moltke v.
Gillies, 332 U.S. 708, 723-24 (1948); see also Williams v.
Bartlett, 44 F.3d 95, 100 (2d Cir. 1994) ("The entire procedure
requires `not only an intricate assessment of the defendant's
intent, knowledge, and capacity, but a strong measure of patience
as well.'" (quoting United States v. Tompkins, 623 F.2d 824, 827
(2d Cir. 1980)).
 Though fundamental, the right to counsel is not
unqualified. We repeatedly have held that, in appropriate
circumstances, a trial court may force a defendant to choose
between proceeding to trial with an unwanted attorney and
representing himself. See Kneeland, 148 F.3d at 11-12; Tuitt, 822
F.2d at 173 n.1; Maynard, 545 F.2d at 278. It also is within the
district court's discretion to refuse a defendant's request to
withdraw from self-representation after a valid waiver if a
defendant seeks counsel in an apparent effort to delay or disrupt
proceedings on the eve of trial, or once trial is well underway. 
See, e.g., Merchant, 992 F.2d at 1095 ("It is well within the
discretion of the court to deny as untimely requests for counsel
made after meaningful trial proceedings have begun." (quotation
marks and citation omitted)); United States v. Taylor, 933 F.2d
307, 311 (5th Cir. 1991) ("A defendant is not entitled to
`choreograph special appearances by counsel,' McKaskle v. Wiggins,
465 U.S. 168, 183 (1984). . . , or repeatedly to alternate his
position on counsel in order to delay his trial or otherwise
obstruct the orderly administration of justice."); Menefield v.
Borg, 881 F.2d 696, 700 (9th Cir. 1989) (similar). A defendant's
decision to exercise his Faretta right and represent himself at
trial is not, however, "a choice cast in stone," Menefield, 881
F.2d at 700; see also Williams, 44 F.3d at 100; Merchant, 992 F.2d
at 1095; United States v. Teague, 953 F.2d 1525, 1538 n.4 (11th
Cir. 1992) (Birch, J., concurring); Taylor, 933 F.2d at 311, and
the importance of representation by counsel makes us "reluctant to
deny the practical fulfillment of the right even once waived 
absent a compelling reason that will survive constitutional
scrutiny," Menefield, 881 F.2d at 700.
 In sum, the essence of the case law is that
representation by counsel is a right of the highest order. It may
be denied a criminal defendant only when circumstances
unequivocally demonstrate a waiver, either when a defendant
knowingly, voluntarily, and clearly asserts the mutually exclusive
right to self-representation, or through delay or other conduct
inconsistent with its continuation. This is the broad legal
framework that governs Proctor's claim, to which we now turn. 
B. Request for Counsel Now or Later?
 It is undisputed that Proctor's statement near the end of
the July 16 hearing "why don't I go ahead and get another lawyer"
 was a request for counsel. The government properly does not
argue that the statement was insufficiently explicit to qualify as
such a request. Although stringent requirements must be met to
establish waiver of the right to counsel, a defendant must be able
to reclaim the right more easily, in light of its "preeminent" role
in the criminal justice system. See Brown v. Wainwright, 665 F.2d
607, 611 (5th Cir. 1982) (en banc) ("Since the right of self-
representation is waived more easily than the right to counsel at
the outset, before assertion, it is reasonable to conclude it is
more easily waived at a later point, after assertion.") (emphasis
in original). For that matter, even though most circuits require
"clear and unequivocal" Faretta waivers, see United States v. Noah,
130 F.3d 490, 498 (lst Cir. 1997), it is generally incumbent upon
the courts to elicit that elevated degree of clarity through a
detailed inquiry. That is, the triggering statement in a
defendant's attempt to waive his right to counsel need not be
punctilious; rather, the dialogue between the court and the
defendant must result in a clear and unequivocal statement.
 The dispute here focuses instead on the breadth of
Proctor's request was he seeking counsel for the rest of the
trial proceedings, or only for the rest of the day? and the
breadth of the district judge's response was he denying counsel
for the trial, or only for arguing the final motion? If, on the
one hand, Proctor only sought and was denied counsel for the rest
of the day, we would have no difficulty in rejecting his Sixth
Amendment claim. The timing was last-minute, and the district
judge had indicated his view that the motion was straightforward
enough to be resolved on the papers, though he charitably granted
a recess so that Proctor could prepare to argue it. In those
circumstances, the decision to deny counsel could in no respect be
deemed an abuse of discretion, which would be the applicable
standard of review. See supra at 11-12.
 If, on the other hand, Proctor sought and was denied
counsel for the rest of the trial proceedings, it is hard to
imagine an explanation for the denial that would withstand scrutiny
under the extant circumstances. The trial was not due to begin for
another month, and standby counsel was presumably available to fill
the role at that point. More importantly, while Proctor's earlier
rejection of two attorneys and the timing of his most recent flip-
flop over representation may have afforded some grounds for
suspicion that he was seeking to manipulate the trial process to
suit his own interests, these factors alone without judicial
inquiry eliciting further evidence and express findings on the
issue of bad faith manipulation were insufficiently compelling to
permit a court to reject out of hand any new request for counsel. 
Here, the record suggests a defendant who, despite earlier
confidence that he could represent himself better than his
appointed attorneys, recognized the value of counsel once
confronted with the inadequacy of his own legal skills in the face
of actual courtroom problems.
 Although it certainly is possible that Proctor was asking
for help at that time only to get through the motions stage of the
case, we think it at least as plausible that, finding himself in
over his head, Proctor concluded that he no longer wanted to be his
own lawyer and therefore was seeking to withdraw his decision to go
pro se. Just before Proctor's statement that he should "go ahead
and get another lawyer," the court had chastised him for his lack
of preparation and warned him that the court would not "spend half
of the court's docket on this case in order to accommodate your
lack of utilizing assistance of counsel early on." The court
concluded its reprimand by saying it would not compromise the
rights of other parties who were waiting for hearings "because you
have some reason why you want to be your own lawyer." Then, when
Proctor expressed a desire for "another lawyer," the court said it
was "too late." There was no elaboration and no explicit statement
that the court meant "too late" in the day, or "too late" for the
motion to be argued.
 Proctor's wording appears to signal resignation that the
task at hand was so difficult that he had no choice but to "get
another lawyer." Asking for "another lawyer," moreover, suggests
to us a general desire to resume the sort of representation he had
with the "other" lawyers. If that were, in fact, his frame of
mind, the court's response easily could have been understood as a
refusal to appoint new counsel for any proceedings yet to come. 
This is, of course, the position Proctor takes on appeal.
 We recognize that there is some basis for the
government's contention that Proctor understood that the court's
ruling was more limited and that he knew he retained the ability to
request counsel for trial. Perhaps most significant is his
unequivocal request, after trial, for an attorney to represent him
at sentencing. Proctor filed a written "Motion for Full Counsel"
asking that standby counsel Foote be appointed. The court quickly
granted the motion. The government argues that Proctor's fully
developed, straightforward request demonstrates that he knew his
Faretta choice was reversible and that he knew how to accomplish
such a change. It is therefore apparent, asserts the government,
that Proctor understood the court's "too late" statement at the
hearing as an inevitable and unassailable judgment that he could
not have counsel to argue the motion.
 The government notes further that, had Proctor felt
unfairly compelled to remain pro se, he likely would have raised
the issue at some point during the trial process with the help of
his stand-by counsel for example, when the judge told the jury at
the outset of the trial that Proctor was exercising his right to
proceed pro se. Instead, he actively represented himself, with
selective assistance from standby counsel, and never once indicated
a lack of commitment to pro se status.
 These circumstantial indicators are not compelling. We
think a contrary interpretation of them is equally supportable. 
Having been told firmly that it was "too late" for new counsel,
Proctor could have assumed that he had no choice but to continue
representing himself. See Williams, 44 F.3d at 101-102
(defendant's acquiescence to court's "categorical" denial of
request to act pro se "cannot be read to signify waiver of a
constitutionally protected right"). Although it would seem
natural for Proctor to have discussed any concerns about his right
to counsel with Foote following the hearing, it also is possible
that Proctor who had met with Foote for the first time that day
 viewed this as a matter between him and the judge. That Proctor
had questions about the court's ruling is evidenced by his specific
request for a copy of the transcript of the hearing for the portion
of the record "relative to the denial of counsel." Although he did
not further pursue the issue, the record indicates, as noted above,
see supra at 9, that the transcript was not available until the eve
of trial, and by then he may have assumed that it was, in fact,
"too late" to revisit the issue. That Proctor made an explicit
request for counsel after the trial ended is of little weight; the
finality of the verdict and its somber result gave him two reasons
to think he may be entitled to, and should attempt to, obtain
representation for that separate stage of proceedings,
notwithstanding the court's earlier rejection of his request. 
Moreover, Proctor's verbal request at the motions hearing was made
on the spur of the moment, without any opportunity to consult with
counsel. It is hardly surprising that the written post-trial
motion was more formal, presumably reflecting the assistance of
standby counsel Foote.
 Thus, we think either inference that Proctor understood
the rejection of counsel applied only to the motion, or that he
viewed the court's ruling as a refusal to allow him to revoke self-
representation could be drawn from the circumstances. Our task,
however, is not to evaluate whether these competing interpretations
are evenly balanced or assess which is more reasonable. Our
obligation, like the district court's, is to "indulge in every
reasonable presumption against waiver" of the right to counsel,
Brewer, 430 U.S. at 404. Therefore, in the face of ambiguity, we
must credit the position most protective of that most important
right. Cf. Tuitt, 822 F.2d at 179 ("[W]here . . . a conflict erupts
between the right to counsel and the right to proceed pro se, a
court should not be criticized for favoring the former right: the
consequences of being deprived of counsel are far more serious than
of not being allowed to proceed uncounselled.").
 Doing so here means that we must accept Proctor's
objectively reasonable assertion that he sought to revoke his
Faretta right to self-representation when he told the district court
that the proceedings had gotten too confusing for him to handle and
credit his objectively reasonable claim that he understood the
district court's "it's too late" response to be a rejection of his
request. The fact that the district court might have had a
different understanding of the colloquy is of no consequence; our
task is to ensure that Proctor was proceeding pro se voluntarily,
and the touchstone of that inquiry is what Proctor, not the district
court, reasonably believed. See 2 Wayne R. LaFave & Jerold H.
Israel, Criminal Procedure 11.3(b), at 32 (1984) ("The critical
issue . . . `is what the defendant understood not what the court
said.'" (citation omitted)). This record does not permit us to
satisfy ourselves to a virtual certainty that Proctor willingly
undertook his own defense.
 We are confident in this result not only because a
contrary conclusion would diminish the right to counsel but also
because the problem easily could have been avoided. We think it is
incumbent upon a court to be as vigilant in rejecting a request for
counsel following assertion of the right to self-representation as
the court is required to be in initially granting pro se status. 
When Proctor asked for "another lawyer," he re-introduced doubt into
the Sixth Amendment calculus, obligating further inquiry. A judge
confronted with a request for counsel by a pro se defendant, however
tiresome and annoying he or she may have been, should as a matter
of course clarify the scope of the request to avoid any possibility
for confusion. And, whatever the breadth of the request, refusing
counsel should be done with utmost caution.
 Here, the district court could have eliminated any
ambiguity if it had told Proctor he was not entitled to "another
lawyer" that day, or if Proctor had been invited to renew his
request for counsel at the end of the motions hearing. The
prosecutor, too, could have clarified the exchange by calling the
ambiguity to the judge's attention, but he did not do so. We are
not holding that a trial judge explicitly must offer counsel to a
defendant at each new stage of a criminal proceeding, but it is
the court's obligation to fully explore an affirmative indication
that a defendant wishes to retract a waiver of his Sixth Amendment
right to counsel. Had that been done here, we believe it likely
that the court would have found that Proctor genuinely wished to
revoke the waiver; and as noted earlier, the record reveals no
sufficient basis, at least without further evidence and express
findings of manipulation and bad faith, upon which the district
court could have rejected such a request.
 Because we cannot say that defendant Proctor's self-
representation at trial resulted from a valid waiver of his Sixth
Amendment right to counsel, we vacate his conviction and remand for
a new trial. In light of our disposition, we decline to consider
Proctor's sentencing claim.
 Vacated and remanded. The motion to amend the notice of
appeal to include a sentencing claim is denied.