UNITED STATES of America, Appellee,

v.

Todd L. PROCTOR, Defendant,
Appellant.

No. 98–1186.

United States Court of Appeals,
First Circuit.

Jan. 29, 1999.

Kern Cleven, by Appointment of the Court, for appellant.

Margaret D. McGaughey, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, was on brief for appellee.

Before SELYA, Circuit Judge, COFFIN and LEVIN H. CAMPBELL, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Appellant Todd Proctor claims that the district court unconstitutionally required him to represent himself at trial despite his timely request for a lawyer. Because the record does not permit us to say with the required assurance that Proctor waived his Sixth Amendment right to be represented by counsel at trial, we conclude that his conviction must be vacated.

## I. *Background*

The details of Proctor's alleged crime have no bearing on this appeal, and we therefore report only that he was convicted on two charges related to marijuana trafficking. The appeal centers on Proctor's decisions concerning his defense and whether the district court properly calibrated the balance between his right to counsel and his reciprocal right to self-representation. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). We begin with a review of the facts relevant to that issue.

Shortly after Proctor's arrest in January 1997, Charles W. Hodsdon II was appointed to represent him. Five weeks later, Hodsdon filed a motion to withdraw "due to an attorney/client breakdown and at the request of the Defendant." The motion was granted on March 19, 1997, and the next day, Jeffrey M. Silverstein was appointed substitute counsel. A superseding indictment was filed on April 17, adding appellant's brother, Clifford Proctor, as a coconspirator and codefendant.[1] On May 9, acting on Proctor's behalf, attorney Silverstein filed a motion for a bill of particulars and three motions to suppress evidence. Silverstein advised the court that Proctor also wished to join three motions filed by Clifford. On May 12, Proctor filed a motion to dismiss, apparently pro se.

On May 20, 1997, Proctor filed two handwritten letters with the court announcing his decision to dismiss Silverstein and asserting "I will now be going pro-se with this case." Proctor accused Silverstein of various failings, including a lack of diligence, collusion with the prosecutor, conflict of interest and misrepresentations. Silverstein filed a mo-

---

1. For the sake of clarity, we shall refer to appellant as Proctor and to his brother as Clifford.

tion the same day seeking to withdraw as counsel, reporting "a breakdown of communications between the defendant and counsel."

On May 28, a hearing was held on the joint motion that Silverstein be permitted to withdraw. After granting it, the court asked Proctor if he wished to proceed pro se, and he replied that he did. The court then engaged in a colloquy with Proctor to ascertain whether he understood the charges, his right to counsel, and the ramifications of proceeding without counsel, and also asked whether Proctor was aware of the rules governing criminal trials and was familiar with the Sentencing Guidelines. Despite Proctor's affirmative responses, the court attempted to dissuade him from self-representation:

> Now, I want to advise you, Mr. Proctor, that in my opinion a trained lawyer would defend you far better than you could defend yourself. I think it's unwise of you to try to represent yourself. You are not familiar with the law; you are not familiar with court procedure; and I would strongly urge you not to try to represent yourself, but you have a perfect right to do so if that is your wish.
>
> If your decision is entirely voluntary, which I assume it is, I will grant you the right to represent yourself if that is your wish. Is that your wish?

Proctor replied that he wanted to proceed pro se. The court then found that "the Defendant knowingly and voluntarily waives his right to counsel" and offered Proctor standby counsel. Proctor accepted standby assistance, and attorney Wayne Foote was appointed for that purpose.[2]

On June 12, Proctor filed a motion for access to a copier and a typewriter. The motion was denied. He submitted two other documents in early July, one questioning the competence of appointed counsel, though not identifying any attorney by name, and both claiming fabrication of a search warrant affidavit. Neither paper requested action by the court.

The events at the heart of this appeal occurred shortly thereafter, at a motions hearing on July 16, 1997. Proctor appeared pro se, with attorney Foote as standby counsel. Foote reported to the court that he had not yet consulted with Proctor, although he had received a letter from the defendant that day about a procedural matter and was working on a response. Clifford and his counsel also were at the hearing.

In response to questions from the court, Proctor said that he wished to withdraw the motion for a bill of particulars that attorney Silverstein had filed, observing that he was most concerned about his pro se motion to dismiss. He also stated, again in response to court inquiry, that he wanted a hearing on two of the three suppression motions filed by Silverstein.[3]

A full-day evidentiary hearing was then held, beginning with a suppression motion filed by Clifford in which Proctor had not joined. The court denied that motion, and Clifford subsequently withdrew his other motions, at which point Clifford and his attorney were excused. The court then heard testimony on Proctor's third motion to suppress, which related to evidence seized from a package in Arizona. Following direct questioning of an Arizona detective by the prosecutor and lengthy cross-examination by Proctor, the court denied the motion.

The court then announced its understanding that the only remaining matter was Proctor's motion to dismiss the indictment based on a discovery violation. Proctor said he wished to be heard on that motion, and the

---

2. There is no serious challenge to the effectiveness of this waiver of counsel; through its careful colloquy, the court demonstrated Proctor's knowing, intelligent and voluntary decision to represent himself. *See United States v. Kneeland,* 148 F.3d 6, 11 (lst Cir.1998); *United States v. Betancourt–Arretuche,* 933 F.2d 89, 92–93 (lst Cir.1991). *See also infra* at 401.

3. Throughout the hearing, references were made to the suppression motions by number, as the "first," or "second" or "third," sometimes generating confusion as to which motion was under discussion. The confusion continues on appeal; the government's brief identifies the first motion as relating to a search warrant issued in Arizona while defendant's brief claims that the first motion concerned a warrant obtained by local authorities in Camden, Maine. The confusion ultimately had no impact on Proctor, who eventually was permitted to argue all of the claims he wished to pursue.

court granted a brief recess for him to prepare. When the hearing resumed, Proctor told the court that he had been "a little confused" just before the recess, and that he also wanted to be heard on what is labeled in his brief as his "first" suppression motion, involving the seizure of evidence from his mother's house in Maine. The judge indicated his belief that that motion had been withdrawn earlier in the hearing, but then asked Proctor if he had evidence to offer on the motion. The colloquy continued as follows:

DEFENDANT: Yeah, and I'm not sure what you mean by—I have printed evidence.

COURT: Well, I'm not going to delay these proceedings any longer than they've been delayed already. If you have any evidence you want to put on with regard to that motion, I'd be glad to accept it into evidence, but I distinctly heard you say, and I think it was because the motion evidently was filed by your previous lawyer, you said you weren't interested in that and you were just interested in the third motion to suppress plus the motion to dismiss. So, I'm not going back and replow that field. But if you have any other evidence that you want to put on or enter with regard to that motion, you can go ahead and do it, and I'll receive it into evidence in this proceeding.

DEFENDANT: Well, as it relates to—I'm not sure exactly how to go about this. In support of this motion, the defendant alleges that the affidavit submitted in support of search—of search warrant contains material, false allegations and/or was prepared in reckless disregard for the truth, and that probable cause is lacking in the absence of those such portions of the affidavit.

I have lots of different things in the affidavit that are false, wrong, whatever, and is this the right forum to discuss that or what?

COURT: What affidavit are you talking about and what motion are you talking about?

DEFENDANT: I'm on Defendant's First Motion to Suppress, U.S. versus Todd Proctor.

COURT: The one filed by Mr. Silverstein?

DEFENDANT: Correct.

COURT: All right. And what's your question?

DEFENDANT: Well, how do I go about the evidence as far as the reckless disregard for the truth?

COURT: Well, Mr. Proctor, we had a discussion some time ago when you wanted to be relieved of your lawyer or lawyers, and I indicated to you that I was not going to be able to give you legal advice. I did appoint for you a standby counsel who's been patiently standing by, but you haven't seen fit to use, and I suggest that you ask him.

DEFENDANT: Okay. Well, I'm going to need to review some things on that.

The court then stated that it would consider the motion withdrawn unless Proctor filed further pleadings raising it. At that point, standby counsel Foote noted that Proctor had, in fact, reserved the suppression motion at issue. The court, clearly becoming frustrated by the confusion, declined to hear the motion that day, but again said that Proctor could file a motion and request a hearing at a later date. The judge then reprimanded Foote for waiting until the end of the day to advise the court of his view of the status of the motions. Foote responded that he had just discovered the problem, and he suggested that the confusion could have arisen because two of the suppression motions concerned the same search, and Proctor *had* withdrawn one of them. The court then continued:

Well, I'll say it once more, and that's the last time I'm going to say it. As far as I'm concerned, that motion has been withdrawn. If you want to have a hearing on the issues in that motion, refile it, and I will revisit it to see whether or not I'm going to open up these proceedings again before we get to a hearing on what we're all after, I hope at some point, is a trial.

Now, do you want to be heard on the motion to dismiss?

Proctor replied that he did, adding, "but I'm not sure if I'm ready at this point." The

hearing concluded with the following exchange:

COURT: Well, I gave you a recess to get ready and I guess at some point, Mr. Proctor, you're going to have to get the message that the court is not in session entirely for your purposes and for this case. I've already given you an inordinate amount of time for hearings on these motions, and I will give you more time if appropriate. But I am not going to spend half of the court's docket on this case in order to accommodate your lack of utilizing assistance of counsel early on. I made that clear to you at the time we had that hearing, and now it's coming to fruition, and I'm not going to delay the court proceedings and the rights of other parties who are waiting for hearings on other matters because you have some reason why you want to be your own lawyer.

DEFENDANT: **Then, at this point, why don't I go ahead and get another lawyer and—because this is just too confusing for me anymore.**

COURT: **Well, it's too late for that, Mr. Proctor.** You want to be heard on the motion to dismiss?

DEFENDANT: I'm not ready right now.

COURT: All right. Then, I'm going to resolve that motion on the papers, and I'm going to deny the motion to dismiss, and this case will be scheduled for trial, as I indicated, on August 25 [th], as the first case on the list.

Court will be in recess.

Proctor subsequently filed four motions for funds, three of which were denied, and two motions for transcripts, both of which were granted. One of these specifically requested "a transcript of that portion of the hearing held on July 16, 1997 relative to the defendant's denial of counsel [by the judge]." Proctor presumably did not receive a copy of the hearing transcript until about the time of trial because it was filed with the clerk on September 16, the day after jury selection and a week before the trial began.[4]

At trial, Proctor represented himself, with Foote providing assistance on a few occasions. Foote also made suggestions concerning the court's draft jury instructions, after Proctor claimed that he was unable to offer his own requested instructions because they had been seized by jail officials. During deliberations, Foote apparently provided guidance to Proctor about a jury note concerning the accuracy of an affidavit, and Proctor subsequently requested that Foote be present if there were any other discussions of jury questions. No further communication occurred, however, until the jury returned guilty verdicts on the two charged marijuana distribution counts.

Following the trial, Proctor submitted a written motion asking that Foote be appointed "full counsel for the forthcoming sentencing and appeals portions of this case." The motion was granted, and Proctor was sentenced in December 1997 to 29 months in prison.

On appeal, represented by new counsel, Proctor contends that the district court violated his Sixth Amendment right to an attorney when it refused at the July 16 [th] hearing to allow him to "go ahead and get another lawyer" to represent him at trial. The government disagrees that a constitutional violation took place, but it does so based on a different understanding of Proctor's colloquy with the district judge. The government maintains that the district court, at the end of the day-long motions hearing, reasonably interpreted Proctor's reference to obtaining a lawyer to be a request for counsel solely to argue the dismissal motion that he felt unprepared to present. It further asserts that the court's refusal to provide an attorney for that purpose was not an abuse of discretion. In the alternative, the government argues that, if this court concludes that the district court denied Proctor counsel for the trial itself, a remand for clarification should be ordered because that decision would warrant explanation and the district court did not state its rationale.

---

4. In mid-August, the Court moved the trial date back about a month, apparently to give Proctor time to argue the first suppression motion.

However, Proctor never pursued that motion any further.

For the reasons discussed below, we cannot conclude on this record that Proctor's conviction was free of a Sixth Amendment violation. Nor do we believe that a remand would resolve our concerns. As we shall explain, the district judge's understanding of his exchange with Proctor is not dispositive; the case turns instead on what message Proctor's words most plausibly conveyed when he asked for counsel and whether his understanding of the court's denial of his request was reasonable. Our decision therefore requires that Proctor be given a new trial.

## II. *Discussion*

■ We begin with a brief sidestep to consider the standard of review. The government assumes that an abuse of discretion standard applies to Proctor's request for counsel, while Proctor maintains that his entitlement to new counsel is a question of law. This conflict reflects the more significant dichotomy in their views about what occurred at the pretrial hearing. Although the government correctly notes the wide discretion given trial courts in resolving issues related to the right to counsel, *see, e.g., United States v. Webster*, 84 F.3d 1056, 1063 n. 3 (8th Cir.1996) (right to claim pro se status subject to court's discretion after trial has started); *United States v. Betancourt–Arretuche*, 933 F.2d 89, 93–94 (1st Cir.1991) (Sixth Amendment does not guarantee right to counsel of choice, and request for eleventh hour change in representation within trial court's discretion); *Tuitt v. Fair*, 822 F.2d 166, 171–72 (1st Cir.1987) (same), the unusual feature of uncertainty over what the defendant was requesting and what he reasonably could understand from the court's response distinguishes this case. The pivotal issues—determining what was at stake in the colloquy between Proctor and the trial judge and how the Sixth Amendment applies to those circumstances—will of necessity be considered for the first time on appeal. Our review is consequently plenary. We thus turn to consideration of Proctor's constitutional claim, beginning with a review of relevant Sixth Amendment jurisprudence.

A. *At the Crossroads of the Right to Counsel and the Right to Self Representation*

The interplay between the Sixth Amendment right to counsel and the reciprocal constitutional right to self-representation, *see Faretta*, 422 U.S. at 806, 95 S.Ct. 2525, has long posed a hazard for trial judges. "[A] trial court can commit reversible constitutional error by either improperly granting a request to proceed pro se—and thereby depriving the individual of his right to counsel—or by denying a proper assertion of the right to represent oneself, and thereby violating *Faretta*." *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir.1990). The potential for error is eased somewhat, however, by the recognition that the right to counsel is paramount: "Where the two rights are in collision, the nature of the two rights makes it reasonable to favor the right to counsel which, if denied, leaves the average defendant helpless." *Tuitt*, 822 F.2d at 174; *see also Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir.1991) (en banc) ("The right to counsel ... is preeminent over the right to self-representation...."); *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir.1982) (en banc).[5]

■ The importance of the right to counsel is reflected in the precautions required when a defendant seeks to relinquish it. Such a waiver must be stated in unequivocal language, *see Faretta*, 422 U.S. at 835, 95 S.Ct. 2525; *Betancourt–Arretuche*, 933 F.2d at 92; *Hamilton v. Groose*, 28 F.3d 859, 861 (8th Cir.1994); *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir.1989), and it must be a knowing, intelligent and voluntary decision, *see, e.g., United States v. Kneeland*, 148 F.3d 6, 11–13 (1st Cir.1998); *Hamilton*, 28 F.3d at 861; *United States v. Merchant*, 992 F.2d 1091, 1095 (10th Cir.1993). Courts must indulge in every reasonable presumption against waiver of the right to counsel. *See*

---

**5.** The hierarchy is sometimes attributed to the fact that the right to counsel attaches automatically and must be waived affirmatively to be lost, while the right to self-representation does not attach unless and until it is asserted. *See, e.g., Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir. 1991) (en banc).

*Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Betancourt–Arretuche,* 933 F.2d at 92. The trial judge must explicitly make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoted in *Kneeland,* 148 F.3d at 11). *See also Maynard v. Meachum,* 545 F.2d 273, 279 (1st Cir.1976) (An "intelligent" waiver of the right to counsel must reflect "a sense of the magnitude of the undertaking and ... an awareness that there are technical rules governing the conduct of a trial."). In discharging the responsibility to determine whether there is an intelligent and competent waiver of the right to counsel in light of the strong presumption against waiver, a trial judge "must investigate as long and as thoroughly as the circumstances of the case before him demand." *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *see also Williams v. Bartlett,* 44 F.3d 95, 100 (2d Cir.1994) ("The entire procedure requires 'not only an intricate assessment of the defendant's intent, knowledge, and capacity, but a strong measure of patience as well.'") (quoting *United States v. Tompkins,* 623 F.2d 824, 827 (2d Cir.1980)).

■■■ Though fundamental, the right to counsel is not unqualified. We repeatedly have held that, in appropriate circumstances, a trial court may force a defendant to choose between proceeding to trial with an unwanted attorney and representing himself. *See Kneeland,* 148 F.3d at 11–12; *Tuitt,* 822 F.2d at 173 n. 1; *Maynard,* 545 F.2d at 278. It also is within the district court's discretion to refuse a defendant's request to withdraw from self-representation after a valid· waiver if a defendant seeks counsel in an apparent effort to delay or disrupt proceedings on the eve of trial, or once trial is well underway. *See, e.g., Merchant,* 992 F.2d at 1095 ("It is well within the discretion of the court to deny as untimely requests for counsel made after meaningful trial proceedings · have begun." (quotation marks and citation omitted)); *United States v. Taylor,* 933 F.2d 307, 311 (5th Cir.1991) ("A defendant is not entitled to 'choreograph special appearances by counsel,'

*McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ..., or repeatedly to alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice."); *Menefield v. Borg,* 881 F.2d 696, 700 (9th Cir.1989) (similar). A defendant's decision to exercise his *Faretta* right and represent himself at trial is not, however, "a choice cast in stone," *Menefield,* 881 F.2d at 700; *see also Williams,* 44 F.3d at 100; *Merchant,* 992 F.2d at 1095; *United States v. Teague,* 953 F.2d 1525, 1538 n. 4 (11th Cir.1992) (Birch, J., concurring); *Taylor,* 933 F.2d at 311, and the importance of representation by counsel makes us "reluctant to deny the practical fulfillment of the right—even once waived—absent a compelling reason that will survive constitutional scrutiny," *Menefield,* 881 F.2d at 700.

In sum, the essence of the case law is that representation by counsel is a right of the highest order. It may be denied a criminal defendant only when circumstances unequivocally demonstrate a waiver, either when a defendant knowingly, voluntarily, and clearly asserts the mutually exclusive right to self-representation, or through delay or other conduct inconsistent with its continuation. This is the broad legal framework that governs Proctor's claim, to which we now turn.

### B. *Request for Counsel Now—or Later?*

It is undisputed that Proctor's statement near the end of the July 16 hearing—"why don't I go ahead and get another lawyer"—was a request for counsel. The government properly does not argue that the statement was insufficiently explicit to qualify as such a request. Although stringent requirements must be met to establish waiver of the right to counsel, a defendant must be able to reclaim the right more easily, in light of its "preeminent" role in the criminal justice system. *See Brown v. Wainwright,* 665 F.2d 607, 611 (5th Cir.1982) (*en banc* ) ("Since the right of self-representation is waived more easily than the right to counsel at the outset, *before* assertion, it is reasonable to conclude it is more easily waived at a later point, *after* assertion.") (emphasis in original). For that matter, even though most circuits require

"clear and unequivocal" *Faretta* waivers, *see United States v. Noah*, 130 F.3d 490, 498 (1st Cir.1997), it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant must *result in* a clear and unequivocal statement.

■ The dispute here focuses instead on the breadth of Proctor's request—was he seeking counsel for the rest of the trial proceedings, or only for the rest of the day?—and the breadth of the district judge's response—was he denying counsel for the trial, or only for arguing the final motion? If, on the one hand, Proctor only sought and was denied counsel for the rest of the day, we would have no difficulty in rejecting his Sixth Amendment claim. The timing was last-minute, and the district judge had indicated his view that the motion was straightforward enough to be resolved on the papers, though he charitably granted a recess so that Proctor could prepare to argue it. In those circumstances, the decision to deny counsel could in no respect be deemed an abuse of discretion, which would be the applicable standard of review. *See supra* at 401.[6]

If, on the other hand, Proctor sought and was denied counsel for the rest of the trial proceedings, it is hard to imagine an explanation for the denial that would withstand scrutiny under the extant circumstances. The trial was not due to begin for another month, and standby counsel was presumably available to fill the role at that point.[7] More importantly, while Proctor's earlier rejection of two attorneys and the timing of his most recent flip-flop over representation may have afforded some grounds for suspicion that he was seeking to manipulate the trial process to suit his own interests, these factors alone—without judicial inquiry eliciting further evidence and express findings on the issue of bad faith manipulation—were insufficiently compelling to permit a court to reject out of hand any new request for counsel. Here, the record suggests a defendant who, despite earlier confidence that he could represent himself better than his appointed attorneys, recognized the value of counsel once confronted with the inadequacy of his own legal skills in the face of actual courtroom problems.[8]

Although it certainly is possible that Proctor was asking for help at that time only to get through the motions stage of the case, we think it at least as plausible that, finding himself in over his head, Proctor concluded that he no longer wanted to be his own lawyer and therefore was seeking to withdraw his decision to go pro se. Just before Proctor's statement that he should "go ahead and get another lawyer," the court had chas-

---

6. It is, of course, possible that that is, in fact, what the judge meant when he told Proctor that it was "too late" to obtain counsel. As noted earlier, the same judge had carefully and thoroughly interviewed Proctor about his decision to forego counsel, following the mandated prescription for ensuring that the defendant's waiver of his Sixth Amendment rights was knowing and voluntary. One might doubt that the same judge would have denied Proctor counsel for trial—still more than a month away—without some explanation.

7. The government asserts in its brief that Proctor's request was for a fourth lawyer, but there is no basis in the record for assuming that he would not have been satisfied if standby counsel Foote were appointed. Indeed, that was the request he made for sentencing.

8. There is no reason to believe that the court considered Proctor's original waiver of counsel to be irrevocable. Had Proctor fired his appointed counsel one or two more times, the court

might perhaps have divined such bad faith as to rule out any further appointment. But the court earlier had tried to talk Proctor out of waiving counsel, suggesting it was still prepared to have appointed counsel one more time. Indeed, we doubt that the Constitution would permit imposing such a condition on the choice to proceed pro se in the absence of more aggravating circumstances, such as a greater number of firings of counsel, or last-minute timing, and a warning. *See generally Kneeland*, 148 F.3d at 11 (defendant warned that if present counsel were dismissed, he would not be provided fourth court-appointed attorney); *United States v. Fazzini*, 871 F.2d 635, 642 (7th Cir.1989) (finding knowing and intelligent waiver of right to counsel where defendant had been warned that fourth court-appointed attorney would be the last); *Maynard*, 545 F.2d at 278 (district judge may give a defendant the "choice between proceeding with counsel already appointed or going pro se").

tised him for his lack of preparation and warned him that the court would not "spend half of the court's docket on this case in order to accommodate your lack of utilizing assistance of counsel early on." The court concluded its reprimand by saying it would not compromise the rights of other parties who were waiting for hearings "because you have some reason why you want to be your own lawyer." Then, when Proctor expressed a desire for "another lawyer," the court said it was "too late." There was no elaboration and no explicit statement that the court meant "too late" in the day, or "too late" for the motion to be argued.

Proctor's wording appears to signal resignation that the task at hand was so difficult that he had no choice but to "get another lawyer." Asking for "another lawyer," moreover, suggests to us a general desire to resume the sort of representation he had with the "other" lawyers. If that were, in fact, his frame of mind, the court's response easily could have been understood as a refusal to appoint new counsel for any proceedings yet to come. This is, of course, the position Proctor takes on appeal.

We recognize that there is some basis for the government's contention that Proctor understood that the court's ruling was more limited and that he knew he retained the ability to request counsel for trial. Perhaps most significant is his unequivocal request, after trial, for an attorney to represent him at sentencing. Proctor filed a written "Motion for Full Counsel" asking that standby counsel Foote be appointed. The court quickly granted the motion. The government argues that Proctor's fully developed, straightforward request demonstrates that he knew his *Faretta* choice was reversible and that he knew how to accomplish such a change. It is therefore apparent, asserts the government, that Proctor understood the court's "too late" statement at the hearing as an inevitable and unassailable judgment that he could not have counsel to argue the motion.

The government notes further that, had Proctor felt unfairly compelled to remain pro se, he likely would have raised the issue at some point during the trial process with the help of his stand-by counsel—for example, when the judge told the jury at the outset of the trial that Proctor was exercising his *right* to proceed pro se. Instead, he actively represented himself, with selective assistance from standby counsel, and never once indicated a lack of commitment to pro se status.

These circumstantial indicators are not compelling. We think a contrary interpretation of them is equally supportable. Having been told firmly that it was "too late" for new counsel, Proctor could have assumed that he had no choice but to continue representing himself. *See Williams,* 44 F.3d at 101–102 (defendant's acquiescence to court's "categorical" denial of request to act pro se "cannot be read to signify waiver of a constitutionally protected right").[9] Although it would seem natural for Proctor to have discussed any concerns about his right to counsel with Foote following the hearing, it also is possible that Proctor—who had met with Foote for the first time that day—viewed this as a matter between him and the judge. That Proctor had questions about the court's ruling is evidenced by his specific request for a copy of the transcript of the hearing for the portion of the record "relative to the denial of counsel." Although he did not further pursue the issue, the record indicates, as noted above, *see supra* at 400, that the transcript was not available until the eve of trial, and by then he may have assumed that it was, in fact, "too late" to revisit the issue. That Proctor made an explicit request for counsel after the trial ended is of little weight; the finality of the verdict and its somber result gave him two reasons to think he may be entitled to, and should attempt to, obtain representation for that separate stage of proceedings, notwithstanding the court's earlier rejection of his request. Moreover, Proctor's verbal request at the motions hearing was made on the spur of the moment, without any opportunity to consult with counsel. It is hardly surprising that the written

9. In *Williams,* the appeals court ordered a new trial based on the denial of the defendant's right to self-representation. Here, where the issue is the right to counsel, we should take even greater care to avoid equating acquiescence with waiver.

post-trial motion was more formal, presumably reflecting the assistance of standby counsel Foote.

 Thus, we think either inference—that Proctor understood the rejection of counsel applied only to the motion, or that he viewed the court's ruling as a refusal to allow him to revoke self-representation—could be drawn from the circumstances. Our task, however, is not to evaluate whether these competing interpretations are evenly balanced or assess which is more reasonable. Our obligation, like the district court's, is to "indulge in every reasonable presumption against waiver" of the right to counsel, *Brewer*, 430 U.S. at 404, 97 S.Ct. 1232. Therefore, in the face of ambiguity, we must credit the position most protective of that most important right. *Cf. Tuitt*, 822 F.2d at 179 ("[W]here ... a conflict erupts between the right to counsel and the right to proceed pro se, a court should not be criticized for favoring the former right: the consequences of being deprived of counsel are far more serious than of not being allowed to proceed uncounselled.").

Doing so here means that we must accept Proctor's objectively reasonable assertion that he sought to revoke his *Faretta* right to self-representation when he told the district court that the proceedings had gotten too confusing for him to handle and credit his objectively reasonable claim that he understood the district court's "it's too late" response to be a rejection of his request. The fact that the district court might have had a different understanding of the colloquy is of no consequence; our task is to ensure that Proctor was proceeding pro se voluntarily, and the touchstone of that inquiry is what Proctor, not the district court, reasonably

believed. *See* 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 11.3(b), at 32 (1984) ("The critical issue ... 'is what the defendant understood—not what the court said.'" (citation omitted)). This record does not permit us to satisfy ourselves to a virtual certainty that Proctor willingly undertook his own defense.[10]

 We are confident in this result not only because a contrary conclusion would diminish the right to counsel but also because the problem easily could have been avoided. We think it is incumbent upon a court to be as vigilant in rejecting a request for counsel following assertion of the right to self-representation as the court is required to be in initially granting pro se status. When Proctor asked for "another lawyer," he re-introduced doubt into the Sixth Amendment calculus, obligating further inquiry. A judge confronted with a request for counsel by a pro se defendant, however tiresome and annoying he or she may have been, should as a matter of course clarify the scope of the request to avoid any possibility for confusion.[11] And, whatever the breadth of the request, refusing counsel should be done with utmost caution.

Here, the district court could have eliminated any ambiguity if it had told Proctor he was not entitled to "another lawyer" *that day*, or if Proctor had been invited to renew his request for counsel at the end of the motions hearing. The prosecutor, too, could have clarified the exchange by calling the ambiguity to the judge's attention, but he did not do so. We are not holding that a trial judge explicitly must offer counsel to a defendant at each new stage of a criminal proceeding,[12] but it is the court's obligation to fully explore an affirmative indication that a

---

10. Nor were there circumstances, as in *Kneeland* or *Fazzini, see supra* at 403 n. 8, justifying the court's compelling him to continue pro se.

11. This shifting burden schematic parallels the structure of the *Faretta* waiver procedure. Once the defendant makes a sufficiently clear request to indicate an intention to switch representational gears, further judicial inquiry is necessary to clarify the nature of those changed intentions. At that point, of course, the similarity disappears, for we discourage *Faretta* waivers while we strongly encourage utilization of counsel.

12. At least one leading treatise, the ABA Standards for Criminal Justice, and the Uniform Rules of Criminal Procedure state that the offer of counsel should be renewed at each stage of a criminal proceeding. *See* 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 11.3(a), at 29–30 n. 2 (1984); *ABA Standards for Criminal Justice*, ch. 5, Providing Defense Services, Standard 5–8.2(b) (3d ed.1992); *Unif. R.Crim. Pro.*, Rule 711(a) & Comment, 10 U.L.A. (1992 Special Pamphlet Supp. at 148).

defendant wishes to retract a waiver of his Sixth Amendment right to counsel. Had that been done here, we believe it likely that the court would have found that Proctor genuinely wished to revoke the waiver; and as noted earlier, the record reveals no sufficient basis, at least without further evidence and express findings of manipulation and bad faith, upon which the district court could have rejected such a request.

 Because we cannot say that defendant Proctor's self-representation at trial resulted from a valid waiver of his Sixth Amendment right to counsel, we vacate his conviction and remand for a new trial.[13] In light of our disposition, we decline to consider Proctor's sentencing claim.

*Vacated and remanded. The motion to amend the notice of appeal to include a sentencing claim is denied.*

---

**13.** A violation of the Sixth Amendment right to counsel is not subject to harmless error review and requires a new trial. *See United States v. Mateo,* 950 F.2d 44, 48 n. 8 (1st Cir.1991).