Anthony ZUPPO, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 208,2002.

Supreme Court of Delaware.

Submitted: Sept. 10, 2002.
Decided: Oct. 4, 2002.

James A. Bayard, Jr., Office of the Public Defender, Wilmington, Delaware, for appellant.

William M. Kelleher, Department of Justice, Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice, HOLLAND and STEELE.

PER CURIAM.

In February 2002, a Superior Court jury convicted Appellant Anthony Zuppo of Second Degree Assault, Offensive Touching, Second Degree Rape, Third Degree Assault, Harassment, five counts of Non–Compliance with Bond Conditions, and three counts of Aggravated Act of Intimidation. At trial, Zuppo requested to proceed *pro se.* Because Zuppo's request came during trial, the judge denied it on the basis that to do so would disrupt the proceedings. Zuppo appeals from that decision.

We conclude that based upon the series of events leading up to Zuppo's request, Zuppo's interest failed to outweigh the State's interest in ensuring the integrity and efficiency of the trial. Therefore, we **AFFIRM** the judgment of the Superior Court.

## I

In September 2000, Wendy Reynolds and Anthony Zuppo began dating and they moved in together quickly thereafter. According to Reynolds' testimony at trial, Zuppo became violent and controlling. Zuppo would not allow her to leave the house without him, and he often referred to her derogatorily. On one particular occasion, Zuppo pinned her to the couch and beat her. Reynolds considered leaving after the beating but, instead, forgave Zuppo. Shortly thereafter, according to Reynolds, Zuppo raped her. Zuppo maintains that she consented.

Reynolds attempted to move out the evening following the alleged rape but claimed Zuppo choked her and threatened to shoot her. Reynolds reported these incidents to the police. The police arrested Zuppo for Terroristic Threatening and Offensive Touching. As a condition of Zuppo's release on bond, a Justice of the Peace Court ordered Zuppo to have no contact with Reynolds.

Despite the no contact stipulation, Reynolds testified at trial that Zuppo tried contacting her at work a matter of days after his release. Reynolds also testified that Zuppo made a harassing phone call to her place of residence. Zuppo denied making the harassing phone call. A Wilmington Police Officer testified that he traced the call from Reynolds' residence to a gas station near Zuppo's residence.

The day after the phone call to Reynolds' residence, Reynolds and Zuppo attempted reconciliation. Reynolds again moved in with Zuppo. The police, however, then arrested Zuppo for violation of bail conditions. For reasons known only to her, Reynolds posted Zuppo's bail and accompanied him to Pennsylvania for one week. In Reynolds' own words, however,

"the abuse started right away."[1]  Inexplicably, Reynolds, sporting a clearly visible black eye, married Zuppo while in Pennsylvania.

The marriage failed to resurrect the relationship.  One evening, shortly after arriving back in Delaware, Zuppo and Reynolds engaged in an argument that culminated in Zuppo attacking Reynolds.  Reynolds claimed she picked up a kitchen knife in self-defense.  Zuppo remained undeterred.  He pressed on, knocked her backwards and grabbed her wrist.  Zuppo then tried to rip the knife from Reynolds and in the process he cut her hand to the bone.  Finally, Reynolds called the police and told them about everything Zuppo had done to her.  She did so "[b]ecause [she] thought if [she] stayed much longer that he really would kill me."[2]  At the time of trial, Reynolds' hand had been operated on twice, and she appeared to face a serious, long-term disability.

On the *second day* of trial, Zuppo asked the court to "reassign counsel."[3]  The court denied the request.  Zuppo then asked to proceed *pro se*.  The State requested that the trial judge make the proper inquiry before Zuppo would be permitted to proceed *pro se*.  The trial judge informed Zuppo of the risks of proceeding *pro se*.  The State then asked the trial judge to deny the request on the basis that it was untimely—coming after one witness

already testified and a second was near the end of cross-examination—and because the granting of the request would prejudice the State.  The trial judge denied Zuppo's request to proceed *pro se* explaining that because the matter arose mid-trial, the trial judge had greater discretion in making a ruling.  Further, the trial judge noted that due to its mid-trial timing, such a request, if granted "does have a tendency to disrupt the proceedings."[4]

## II

The right to represent oneself in a criminal proceeding is fundamental.  It is protected by the Sixth Amendment to the United States Constitution and by Article I, § 7 of the Delaware Constitution.[5]  As an issue of constitutional dimension, we review *de novo* the trial judge's denial of Zuppo's request to proceed *pro se*.[6]

The role of the trial judge when entertaining a motion to proceed *pro se* is to (a) determine if the defendant has made a knowing and intelligent waiver of his right to counsel and (b) inform the defendant of the risks inherent in going forward without the assistance of legal counsel.[7]  Even if the above two steps are taken, however, the right to represent one's self is not absolute.[8]  For instance, the right to self-representation is not a license to disrupt the criminal calendar, or a trial in progress.[9]  After a trial has begun, the

1.  Appendix to Appellant's Opening Brief at 45.

2.  *Id.* at 52.

3.  *Id.* at 60.

4.  Appendix to Appellant's Opening Brief at 65a–66.

5.  *Stigars v. State*, Del.Supr., 674 A.2d 477, 479 (1996); *Hooks v. State*, Del.Supr., 416 A.2d 189, 197 (1980) (citing *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527,

45 L.Ed.2d 562, 566 (1975)); *Snowden v. State*, Del.Supr., 672 A.2d 1017, 1020 (1996).

6.  *Stigars*, 674 A.2d at 479.

7.  *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–582; *Briscoe v. State*, Del. Supr., 606 A.2d 103, 107–108 (1992).

8.  *Payne v. State*, Del.Supr., 367 A.2d 1010, 1015–1017 (1976).

9.  *See Buhl v. Cooksey*, 233 F.3d 783, 797 (3d Cir.2000).

right of self-representation may be curtailed, and the trial judge considering the motion must weigh the legitimate interests of the defendant against the prejudice that may result from the potential disruption of proceedings already in progress.[10] The United States Supreme Court has noted that even at the trial level, the government's interest in ensuring integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.[11]

■ In this case, Zuppo, citing *Pitts v. Redman*,[12] a case never addressed and applied by this Court but arguably persuasive nonetheless, suggests that the trial judge erred because "[t]he record does not reflect a clear balance by the trial court of the prejudice to the defendant versus the potential disruption of the trial."[13] In *Pitts*, a state prisoner sought habeas corpus relief in the District Court of Delaware. The presiding judge held that denying a defendant's request to proceed *pro se* would not violate his Sixth Amendment right to represent himself when the defendant made the request on the third day of trial.[14] The presiding judge also stated that the state court trial judge's failure to mention expressly the timeliness of the request as a reason for denying it did not constitute error because the record adequately revealed the state trial judge's concerns.[15] "Though his reasons were only partially articulated on the record, the basis for the judge's decision was apparent and the denial of Pitts' *pro se* request was

entirely justified."[16] Thus, assuming that Zuppo contends that the trial judge must detail and reconcile the two competing interests of the defendant and the State, *Pitts* does not require that kind of detail to demonstrate a "clear balance by the trial court of prejudice to the defendant versus the potential disruption of the trial." It is sufficient that the record reflect clear findings and logical reasoning underlying the ruling denying the request.

■ The trial judge here discussed on the record the relevant balancing of the competing interests inherent in Zuppo's mid-trial request to proceed *pro se*. Specifically, the judge noted that disruption would likely result if he granted the motion.[17] Further, the record suggests that the trial judge implicitly weighed the competing interests with care:

> THE PROSECUTOR: I guess I would only ask the Court to address what Judge Roth set out, that it is a discretionary decision at this point, and that not only would he get less-effective representation, which is something the Court should consider, but it would have detrimental impact on the proceedings at this time because it is an untimely request.
>
> THE COURT: I think the Court does have greater discretion ... to deny a request when it does come up during a trial, because it does have a tendency to disrupt the proceedings. I think in this case, I don't think you're prepared to

---

10. *United States v. Stevens*, 83 F.3d 60, 66–67 (2d Cir.N.Y.1996).

11. *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 162, 120 S.Ct. 684, 691, 145 L.Ed.2d 597, 607 (2000).

12. 776 F.Supp. 907, 916 (D.Del.1991).

13. Appellant's Op. Br. at 11, *Zuppo v. State* (No. 208,2002).

14. *Pitts*, 776 F.Supp. at 916.

15. *Id.* at 919.

16. *Id.*

17. Appendix to Appellant's Opening Brief at 66.

examine witnesses, and I'm not inclined, under these circumstances on the second day of trial, measured from when the evidence was introduced, I'm not inclined to grant your request.[18]

In addition, the trial judge also specifically addressed Zuppo's interests in wishing to proceed *pro se:*

THE DEFENDANT: What is hurting me, I've got notes with respect to Mr. Bayard, because he's a public defender, but I have, you know, a private attorney that has his own firm that is telling me things that should be brought up to light to help me, and then I have Mr. Bayard saying that's not going to help . . .

. . .

THE COURT: I think you're upset. I think this decision on your part has been one that was only made this morning, or you may have been thinking about after yesterday. You know, you've heard the evidence that's, you know, been coming in from [ ] witnesses. I think it upset you.[19]

Based on a record that we deem to reflect adequately a clear and logical basis for the trial judge's reasoning, we conclude that the trial judge properly determined that Zuppo's interest in proceeding *pro se* failed to outweigh the State's interest in ensuring the integrity and efficiency of the trial.

The trial judge properly denied Zuppo's motion to proceed *pro se* and the judgments of conviction in the Superior Court are **AFFIRMED**.

---

**18.** *Id.* at 65a–66.  **19.** *Id.* at 65–66.