IN THE SUPREME COURT OF THE STATE OF DELAWARE

KILI MAYFIELD,                          §
                                        §   No.   493, 2019
    Defendant-Below,                 §
    Appellant,                       §   Court Below:   Superior Court
                                        §   of the State of Delaware
    v.                               §
                                        §   ID. Nos.   1806010081
STATE OF DELAWARE,                      §              1807016545
                                        §              1807016528
    Plaintiff-Below,                 §
    Appellee.                        §
                                        §

Submitted:   April 14, 2021
Decided:   June 30, 2021


Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.


Upon appeal from the Superior Court.   **AFFIRMED**.


Christina L. Ruggiero, Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant, Kili Mayfield.

Sean P. Lugg, Esquire, Delaware Department of Justice, Wilmington, Delaware, for Appellee, State of Delaware.


**VAUGHN**, Justice:

The Appellant, Kili Mayfield, was convicted at a Superior Court bench trial of Rape in the First Degree (two counts), Rape in the Second Degree (four counts), Kidnapping in the First Degree (one count), Strangulation (one count), and Assault in the Third Degree (one count). In pre-trial proceedings, he was initially represented by counsel from the Public Defender Division of the Office of Defense Services. Several months before trial Mayfield filed a motion indicating he wished to waive his right to counsel and proceed *pro se.* The Superior Court held a hearing and granted the motion. On appeal, Mayfield does not dispute that the Superior Court committed no error in granting his motion to waive counsel and proceed *pro se*.

At a conference held the day before his scheduled trial date, however, Mayfield informed the trial judge for the first time that he had decided that representing himself was not in his best interest. He requested time to retain private counsel. In the alternative, he requested that the Public Defender's Office be reappointed to represent him at trial. After fully considering Mayfield's requests, the judge determined that granting either request would necessitate a trial delay. He also determined that the trial should go forward as scheduled the next day, that the continuance that either of Mayfield's requests would entail should be denied, and that his request for counsel should, therefore, be denied. The trial did commence the next day, with Mayfield representing himself.

Mayfield claims on appeal that the trial judge's denial of his request for reappointment of the Public Defender's Office to represent him at trial violated his Sixth Amendment right to assistance of counsel. For the reasons that follow, we reject Mayfield's claim and affirm the Superior Court judgment.

**FACTS AND PROCEDURAL HISTORY**

In July 2018, Mayfield was arrested for a series of forcible rapes of three different women in Wilmington. All of the charged offenses were consolidated into a single indictment. The Public Defender's Office undertook Mayfield's legal representation. On December 18, 2018, Mayfield filed a motion to waive counsel and proceed *pro se*. Both the State and the Public Defender's Office wrote letters to the court expressing concern with Mayfield's motion, citing the serious nature of the charges and the severe penalties he was facing. Mayfield responded by writing a letter to the court reasserting his desire to proceed *pro se*. On February 4, 2019, a Superior Court judge specifically assigned to the case held a hearing to address the motion. Mayfield unequivocally informed the court that he wished to proceed *pro se*. Following a thorough colloquy with Mayfield, the judge determined that Mayfield was knowingly, intelligently, and voluntarily waiving his right to be represented by counsel. His motion to proceed *pro se* was granted and the attorney assigned to Mayfield's case by the Public Defender's Office was appointed standby counsel. The judge explained to Mayfield that standby counsel would "not take

3

any legal action" on his behalf, that counsel was there as a resource to him and the court, but she would not "independently act."[1] On February 13, 2019, Mayfield was given a trial date of July 9, 2019.

In the months following the February 4, 2019 hearing, Mayfield was very energetic in pre-trial activity. He filed several motions, including a motion to dismiss all charges, two motions to suppress evidence, an amended motion to suppress evidence, a motion for production of discovery, a motion in response to a protective order, and a motion *in limine* to exclude from evidence statements made by one of the alleged victims. Status conferences were held on April 5 and May 31, 2019. All of Mayfield's motions were denied. At a hearing on June 17, 2019, Mayfield requested a bench trial and waived his right to a jury trial.

On July 8, 2019, the day before Mayfield's bench trial was set to begin, the judge held a status conference. At this conference, and for the first time since waiving his right to counsel and electing to proceed *pro se*, Mayfield orally requested that he be represented by counsel at trial. He reported to the judge that he was requesting counsel because he felt overwhelmed and was not prepared to try the case. He informed the judge that his family had contacted a private attorney who was willing to enter his appearance. He also informed the judge that the private attorney wanted a 60-day continuance. The judge asked standby counsel if she

---

[1] App. to Appellant's Op. Br. at A104-105 [hereinafter A__].

could contact the private attorney and hear directly from him where the efforts to retain his services stood. The judge recessed the conference so that she could do so. When the conference resumed, standby counsel reported that the private attorney's office confirmed that there had been a consultation with Mayfield's girlfriend, but no appearance would be entered until a retainer was paid. Later in the conference, standby counsel related that the private attorney's office also indicated that he would need a continuance of 90 days, not 60 days. Standby counsel was also able to reach Mayfield's girlfriend during the recess. The girlfriend stated that she had part of the retainer. Standby counsel impressed upon the girlfriend that the private attorney needed to request a continuance because trial was scheduled for the next day. The girlfriend said that her plan was to make payment of the retainer that day.

The judge then asked for the State's position "on basically what is now a motion to continue the trial for the entry of an appearance of an attorney."[2] The State strongly opposed a continuance. The State argued that its witnesses were "all lined up."[3] The prosecutor argued that there "are sensitive victim issues in this case."[4] He explained that the State had met with the alleged victims, "who are extremely fragile individuals," multiple times "over the past few weeks intentionally

---

[2] A151.
[3] A152.
[4] *Id*.

5

at a stage closer to trial to minimize the amount of mental anguish basically that they have to deal with in going through this process."[5]  Later in the conference, the prosecutor mentioned that one of the alleged victims would not be appearing at trial, which he said could be attributable, at least in part, to the time it had taken to get the case to trial.  He reported that she had been in state custody a month or two ago, but upon her release had fled the state and could not be located.[6]  He argued that a continuance would be prejudicial to the State's case.

The judge then asked Mayfield when he had started his attempt to obtain private counsel.  Mayfield responded that it had been about a month ago.  When asked by the judge why he had not communicated his change of mind then, Mayfield responded that he and his family had talked about it several times, that he and his family had decided it was best to seek an attorney, and the plan was to pay the attorney to step in and take over the case.

After further discussion of the fact that Mayfield was requesting counsel on the day before his trial date, the trial judge stated that he would not continue the case, adding, "[i]f an attorney comes here tomorrow ready to enter his or her appearance and asks for a continuance on your behalf, then I will at least hear that at that time.

---

[5] *Id.*

[6] The State had filed a pending motion *in limine* to admit a statement of this witness in lieu of her live testimony.

But I'm not going to do it on the speculation that that may occur."[7]

The judge then asked the prosecutor how many expert witnesses the State had. He responded that there were three, two of whom were scheduled to testify on the first day of trial. Later in the conference he reported that the two scheduled to testify on the first day of trial were DNA experts. The judge then noted that Mayfield's motions made it clear that he had "scoured the discovery materials[,]" and asked him whether his attempts to prepare himself for trial had changed since he had started thinking about counsel.[8] Mayfield responded that they had, that he thought counsel would be entering an appearance, and that he was not prepared for trial the next day.

The judge then asked Mayfield what he would like to see happen if the private attorney his family was trying to secure did not enter an appearance the next morning before trial. Mayfield responded that, in that event, he would like to be represented by the Public Defender's Office. The judge then asked the prosecutor and standby counsel when they would be able to try the case if the trial were continued. Standby counsel reported that she had a murder trial in September and that there were "some issues that our in-house people have brought up or brought to my attention [including expert witness issues] that I think need to be addressed."[9] She believed that she

---

[7] A155.
[8] A157.
[9] A164.

could not be ready to try the case until close to the end of the year.  The judge asked the prosecutor and standby counsel to provide a realistic, potential trial week, if the case were continued.  A recess was then taken.

Following the recess, the prosecutor explained that because of other scheduled trials, the earliest he would be available to try the case would be November or December (without taking into account witness availability).  He also reported that the State had seventeen or eighteen witnesses.  Standby counsel reported that her schedule would allow her to try the case in the first or second week of December.

Discussion then turned to the fact that Mayfield had recently filed a witness list with the court.  The judge noted that the parties had allowed two weeks for trial when it was scheduled as a jury trial, and asked standby counsel whether she could attend to having subpoenas served upon Mayfield's witnesses.  She indicated that she could.

After listening to final comments from the State and Mayfield, the judge began his ruling by observing that:

> At play here is the intersection of two very important rights, first of all, the right to counsel in a case.  And generally, the courts will recognize that a right to counsel is paramount.  And sometimes those two rights, right to counsel and right to proceed pro se, collide in certain ways.
>
> The nature of the two rights generally will favor the right to counsel, which, if denied, leaves the defendant without a trained professional to guide his or her litigation.  And

the importance of that right to counsel is reflected in the cautions that are required when a defendant seeks to relinquish that right to counsel. Those waivers must be made in unequivocal language as we understand from *Faretta* and the cases thereafter. It has to be a knowing, intelligent, and voluntary decision.[10]

The judge then proceeded to deny Mayfield's request for counsel. The reasons he gave can be summarized as follows: Since undertaking self-representation, Mayfield had been vigorous in his own defense, "filing motion after motion, making it very clear that he has read everything that, as I said, picking apart times, dates, statements, inconsistencies, and concerns about the evidence he had. At all points, he indicated a full wish to proceed pro se."[11] While the judge had encouraged Mayfield to make use of standby counsel in preparing for trial, it had been made clear when Mayfield's motion to proceed *pro se* was granted that all that would be expected from standby counsel was that she be "prepared to take over . . . logistics and only deal with . . . logistics," at least in part because of "the relationship, the breakdown of the relationship to a certain extent" between Mayfield and standby counsel.[12] "In the meantime," the State had prepared 17 or 18 witnesses for trial, including three experts, two of whom were scheduled to testify on the first day of trial.[13] Mayfield had the expert reports and had "written exhaustively about what

---

[10] A181-82.
[11] A183.
[12] A184.
[13] A185.

he believes about the experts."[14] The State had "already lost one of its complaining witnesses,"[15] at least in part, due to the passage of time. Mayfield had been provided with *Jencks* material "well ahead of time so that he has the allegations of the witnesses and their statements."[16] Mayfield's filings showed that he had "gone through all the discovery materials and prepared himself."[17] He had prepared a defense witness list with nine witnesses. He had not issued any "concern about proceeding *pro se* until today."[18] Appointment of counsel for Mayfield would necessitate a four or five month continuance. The court concluded, "Mayfield's request and the basis for his request are not outweighed by the other prejudice that would be visited by a continuance."[19]

Mayfield's bench trial began as scheduled the next day and resulted in the aforementioned convictions.

## DISCUSSION

This Court generally reviews "issues of a constitutional dimension *de novo*,"[20] and, ordinarily, "questions arising from a defendant's Sixth Amendment absolute

---

[14] *Id.*

[15] *Id.*

[16] A186.

[17] A189.

[18] *Id.*

[19] A193.

[20] *Williams v. State*, 56 A.3d 1053, 1055 (Del. 2012) (citing *Harmon v. State*, 918 A.2d 1138, 1140 (Del. 2007); *Zuppo v. State*, 807 A.2d 545, 547 (Del. 2002); *Stigers v. State*, 674 A.2d 477, 479 (Del. 1996).

10

right to professional legal counsel receive plenary review."[21] "It is [also] well-established that criminal defendants have a constitutional, Sixth Amendment right to waive counsel and continue *pro se* if they do so knowingly, intelligently, and voluntarily." [22] In this case, both parties agree that Mayfield knowingly, intelligently, and voluntarily waived his right to counsel.

Mayfield contends that the standard of review in this case should be *de novo*. He argues that the trial judge should have scrupulously honored his reassertion of his right to counsel and not forced him to trial without the assistance of appointed counsel. The State contends that Mayfield's reassertion of his right to counsel under the circumstances of this case is subject to an abuse of discretion standard of review. We begin, therefore, with a discussion of the standard of review. During that discussion, we will also discuss how the facts of the cases cited by the parties compare to the facts of this case.

Mayfield relies primarily upon two cases in support of his contention that the standard of review is *de novo*. One is the case of *United States v. Pollani*.[23] In that case, the defendant was charged with transportation of stolen IBM computer parts in interstate commerce. Pollani asked for and was granted permission to

---

[21] *United States v. Leveto*, 540 F.2d 200, 207 (3d Cir. 2008) (internal citation omitted.).
[22] *Smith v. State*, 996 A.2d 786, 789-90 (Del. 2010) (quoting *Boyer v. State*, 2009 WL 3841973, at *1 (Del. Nov. 16, 2009)).
[23] 146 F.3d 269 (5th Cir. 1998).

11

waive counsel and proceed *pro se*.   Four days before trial, an attorney he privately retained, Mr. Snow, filed motions on Pollani's behalf for a continuance and "substitution of counsel."[24]   The district court held a hearing the next day, at which Snow was permitted to appear for the limited purpose of arguing his motions.   The district court denied the request for a continuance.   The discussion then turned to Pollani's representation at trial.   When Snow asked the judge whether he would be permitted to represent Pollani at trial, the judge responded that Pollani had waived counsel and an 11th hour "substitution of counsel" would not be permitted.   As the back and forth continued, Pollani stated, "[i]f the Court does not allow a continuance in this, *I would ask of the Court that Mr. Snow still be available to represent me as counsel* and we'll just have to do a lot of cramming[.]"[25]   The district court ruled that "you may hire him to come in here" but "Mr. Snow will be silent except for his consultation with you at the counsel table."[26]   Pollani was tried as scheduled and found guilty.   He appealed, claiming that he had been denied his right to counsel.

On appeal, the Fifth Circuit Court of Appeals first considered the district court's denial of Pollani's request for a continuance.   It found that denying the continuance request was not an abuse of discretion, stating that "[t]he district court has an interest in maintaining its docket and keeping cases on schedule, and it validly

---

[24] *Id*. at 271.
[25] *Id.* (emphasis in original).
[26] *Id.*

12

protected those interests in this case by refusing to allow Pollani to manipulate the trial date by strategically timing the hiring of counsel."[27]

The court then turned to Pollani's claim that he was deprived of his right to counsel. It concluded that he had been and reversed his convictions. It seems that the standard of review for consideration of that claim is not clearly stated in the opinion. The court did observe that "[o]f necessity, the right to reassert a previously waived right to counsel has its boundaries."[28] Since the court did not expressly analyze Pollani's claim that the district court deprived him of counsel as being an abuse of discretion, we will infer that it reviewed his claim *de novo* as argued by Mayfield.

The dispositive fact in *Pollani* was that Mr. Snow was willing to proceed with representing Pollani at the scheduled trial date four days later. Therefore, the court found, Pollani's reassertion of the right to counsel and the entry of appearance by privately retained counsel would not have "imped[ed] the orderly administration of justice."[29] The court further reasoned that "[h]ad Pollani been seeking appointed counsel four days before the trial was to begin, the district court could have denied the request-there was not enough time to appoint counsel at that late date."[30]

---

[27] *Id.* at 272.
[28] *Id.* at 273.
[29] *Id.*
[30] *Id.*

13

We have no disagreement with the Fifth Circuit's ruling. If Mayfield had successfully retained private counsel at any point before trial who was willing to enter an appearance and proceed with trial on the scheduled trial date, the judge would have been obligated to honor Mayfield's reassertion of his previously waived right to counsel. Mayfield's request, however, would have necessitated a continuance, which distinguishes *Pollani* from this case.

The other case which Mayfield primarily relies upon in support of his contention that the standard of review is *de novo* is *United States v. Proctor*.[31] Proctor was charged with trafficking in marijuana. He waived his right to counsel and was proceeding *pro se* with standby counsel. A little more than a month before the scheduled trial date, a full day was spent on various motions. It appears that toward the end of the day a motion remained which Proctor said he was not prepared to present. As the judge and Proctor were speaking back and forth, the judge said:

> I am not going to spend half of the court's docket on this case in order to accommodate your lack of utilizing assistance of counsel early on. I made that clear to you at the time we had that hearing and now it's coming to fruition, and I'm not going to delay the court proceedings . . . because . . . you want to be your own lawyer.[32]

Proctor responded by saying "[t]hen, at this point, why don't I go ahead and get

---

[31] 166 F.3d 396 (1st Cir. 1999).
[32] *Id.* at 400.

14

another lawyer and – because this is just too confusing for me anymore."[33] The judge summarily responded that "it's too late for that, Mr. Proctor."[34] Proctor, still representing himself, was convicted at trial. On appeal, he argued that he had reasserted his right to counsel in the foregoing exchange, and that the district court deprived him of that right. The government responded that the district court, at the end of the day-long motions hearing, reasonably interpreted Proctor's reference to a lawyer as a request for counsel solely to argue the remaining motion which Proctor was at the time unprepared to present.

Early in its discussion, the First Circuit Court of Appeals stated that "[t]he pivotal issues – determining what was at stake in the colloquy between Proctor and the trial judge and how the Sixth Amendment applies to those circumstances – will of necessity be considered for the first time on appeal. Our review is consequently plenary."[35]

The court determined that Proctor was not merely seeking counsel for the rest of the day to help him with his motions. It interpreted his statement as a request for counsel for the rest of the pre-trial and trial proceedings. Since "[t]he trial was not due to begin for another month, and standby counsel was presumably available to fill the role at that point," the court reasoned, "it is hard to imagine an explanation

---

[33] *Id.*
[34] *Id.*
[35] *Id.* at 401.

15

for the denial that would withstand scrutiny under the extant circumstances."[36]   It accordingly reversed Proctor's convictions.

During the course of its analysis, the Fifth Circuit did observe that it is within a trial judge's "discretion to refuse a defendant's request to withdraw from self-representation after a valid waiver if a defendant seeks counsel in an apparent effort to delay or disrupt proceedings on the eve of trial[.]"[37]   *Proctor* is distinguishable from this case in that Proctor reasserted his right to counsel over a month before the scheduled trial date, as opposed to the day before trial, with a standby counsel who was "presumably" prepared to step into the role of trial counsel.

In support of its contention that the proper standard of review is abuse of discretion, the State relies primarily upon the case of *United States v. Leveto*.[38]   In that case, the defendant, Daniel Leveto, was indicted for tax evasion.   He elected to represent himself.   On the morning of trial, before jury selection began, he informed the district court judge that he wanted to be represented by counsel.   The district court judge rejected his request.   Standby counsel was present with Leveto, but during the discussion between Leveto and the district court judge, the judge ruled that "[u]nder the circumstances of this case, I can't imagine stopping now and appointing [the stand-by counsel] or anyone else to represent you and prepare to

---

[36] *Id.* at 403.
[37] *Id.* at 402.
[38] 540 F.3d 200 (3d Cir. 2008).

defend a case like this."[39]   Leveto therefore represented himself at trial and was convicted.   On appeal, Leveto claimed that he had been deprived of his right to counsel.

The Third Circuit Court of Appeals rejected his claim and affirmed his convictions.   It extensively reviewed case authority, including *Pollani* and *Proctor*, and found "wide agreement that, once waived, the Sixth Amendment right to counsel is no longer absolute," and there is a "broad consensus" that "the consideration of a defendant's post-waiver request for counsel is well within the discretion of the district court."[40]   The court also found that "particularly as the trial date draws nearer, the district court can and should consider the practical concerns of managing its docket and the impact that a request may have on its general responsibilities for the prudent administration of justice."[41]

We agree with *Leveto* and adopt its findings as establishing the proper standard of review in this case.   If a *pro se* defendant's reassertion of his right to counsel will, or may, necessitate a continuance of a scheduled trial date, or if it might otherwise disrupt the orderly administration of the case, the Superior Court's denial of the request for counsel will be reviewed for abuse of discretion.   In exercising its discretion, the court should fully explore and consider all circumstances relevant

---

[39] *Id.* at 205.
[40] *Id*. at 207.
[41] *Id*.

17

to the defendant's request, such as the rights of the defendant, any prejudice which a delay may cause to the State, and the need for the effective administration of justice.

In this case, a careful reading of the July 8 office conference transcript leads us to conclude that the Superior Court acted within its discretion when it denied Mayfield's request for counsel and a continuance. The trial judge thoughtfully and carefully considered all the circumstances relevant to Mayfield's untimely request. He determined that Mayfield's request would necessitate a continuance. The judge recognized that as between the right to counsel and the right to proceed *pro se*, the right to counsel is paramount. He fully explored the efforts of Mayfield's family to obtain a private attorney. He considered the fact that when Mayfield was granted permission to proceed *pro se*, it was understood by all concerned that standby counsel would not be expected to be prepared to try the case and would provide only "logistical" support. He considered the potential prejudice to the State if a continuance were granted. He considered the trial preparation activities Mayfield had engaged in before he decided that he wished to have counsel reappointed for him. He fully explored when the trial could be rescheduled if standby counsel's role was elevated to full trial counsel. He satisfied himself that the witnesses on the witness list Mayfield had filed could still be subpoenaed. He considered all of the relevant attendant facts and circumstances. We conclude, therefore, on the

18

facts of this case, that the judge's denial of Mayfield's request for reappointment of counsel and a continuance was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.